No. 93.—WILLIAM J. BELL *et al.*, plaintiffs in error, *vs.* ELIZA BELL, by her next friend, ELIZABETH BUGG, defendant in error.

At common law, marriage amounts to an absolute gift to the husband of all the personal estate of the wife, of which she is at the time actually possessed, in her own right.

In her choses in action he acquires only a qualified property, which may be made absolute by a reduction into possession during his life.

The wife is entitled in equity to a suitable provision for herself and her children, out of her fortune, whenever it is within reach of a court of chancery, and not reduced into possession by the husband; and this right extends both to legal and equitable choses in action.

Whether the children have a distinct substantive right to a provision out of her choses in action. *Quere?*

The wife may file her bill by her next friend, to assert her equity.

The wife's equity is good against her husband's assignees in bankruptcy or insolvency, his assignees to pay his debts generally, and also against a special assignee, or purchaser for value.

A division of an estate under our statute, at the instance of the administrator, *setting apart* one share to the husband in right of his wife, and leaving it in the possession of the administrator, (neither the husband nor wife being present, nor represented, and no refunding bond being given,) is not such a reduction into possession as will defeat the wife's equity.

This was a bill in equity, filed by Eliza Bell, a *feme covert*, by her next friend against her husband, William Jewell, the administrator on the estate of her deceased father, and sundry judgment creditors, praying for an injunction, and decree for what is commonly called the wife's equity, to be set apart in the name of a trustee for the special use of herself and her children. The bill stated that the complainant was one of five distributees of the estate of her deceased father, William Bugg, who died in 1845, possessed of considerable property, consisting of lands and slaves, &c. That said William Jewell administered on his estate. That on the application of the administrator, the Court of Ordinary, in December, 1845, appointed certain persons as commissioners to divide the slaves. That on the 10th day of December following, the commissioners thus appointed divided the slaves into five portions, and that four of the slaves were apportioned to her husband in her right. That neither the complainant nor her husband was a party to the proceedings for a division, nor had notice of the application therefor, nor was either of them present at the division. That the slaves thus allotted and set apart never went out of the possession of the administrator, Jewell, and no person was present on the part of her husband to receive them, and the administrator continued to retain control over them. That they had never been in the possession of her husband, but had remained with the administrator until they were seized by the sheriff as the property of her husband by virtue of an execution at the

instance of Thomas E. Zuber, one of the defendants to said bill. That the levy was made on the 15th of December, while said slaves were in the possession and under the control of the administrator. That said slaves were sold in February, 1846, by the sheriff, under an agreement that the proceeds of the sale should be held by the sheriff, subject to the decision of the court on the facts of the case, in the same manner, and with the same benefit to her, as on an application by bill on her part to stay the sale, and to seek the aid of a court of equity in her behalf to have the property set apart for her exclusive benefit, so that the creditors of her husband should not subject the same to the satisfaction of their demands against him. And finally, that her husband was hopelessly insolvent, and unable to maintain her and her children.

This bill was returned to October Term, 1846, of Oglethorpe Superior Court, when the solicitors for the defendants below demurred thereto on the following grounds:

1st. That so far as respected the money in the hands of the sheriff, or the slaves out of which the same was raised, the wife could have no equity to a settlement out of the same, as, by the allegations in her bill, the said creditor-defendants were calling upon neither a court of law nor equity to assist them in prosecuting their rights, but were merely executing judgments of the court already obtained.

2d. Because the creditors could levy, and did levy only upon the legal interest of the husband, William J. Bell, their debtor, and could sell and did sell nothing more. If the slaves were not his, the purchaser received no good title.

3d. That if the slaves were not the subject of levy and sale, a full common-law remedy was afforded in a claim by the administrator, Jewell. If he failed to claim, and thereby the rights and interests of the complainant were affected, her redress was upon him, and not upon the creditors, in whose conduct there was nothing charged illegal, unconscientious, or inequitable.

4th. Because the creditors were not attempting to make any equitable interest of the wife subject to their debts, and consequently the rule of doing equity, when they sought equity, did not apply.

5th. Because the exhibit of the return of the commissioners attached to complainant's bill showed that the slaves levied on had been set apart as the portion of William J. Bell, and the only reason why they had not been delivered, was because he was not present. If the order of division and return of the commissioners were illegally obtained, the complainant's remedy was upon the administrator.

6th and lastly. Because the marital rights of the husband had attached, and consequently the judgment creditors had a right to sell.

After argument upon the demurrer, the court below, Judge Sayre presiding, overruled the same, and ordered the defendants to answer. To which decision the counsel for the plaintiffs in error excepted.

1st. That the court erred in deciding that a court of equity would interfere, and enjoin a judgment creditor from selling property levied on as the property of the husband, until provision was made for the support of the wife.

2d. That the court erred in deciding that the marital rights of the

husband had not attached to the slaves set apart as his portion of the estate.

3d. That the court erred in deciding that the complainant could seek the benefit of the division made by the commissioners, and at the same time deny the benefit of it to the judgment creditors as being irregular and illegal.

4th. That the court erred in deciding that the marital rights did not attach till the indemnifying bond was given.

5th. That the court erred in deciding that the return of the commissioners of the division, and the order making the return the judgment of the Court of Ordinary, were not sufficient to make the husband's marital rights attach.

6th. That the court erred in overruling the demurrer.

THOMAS R. R. COBB, for the plaintiffs in error, insisted :

1st. That equity will not enjoin a *fi. fa.* against the husband from selling property levied on as his, for the purpose of making a settlement on the wife.— *Murray* vs. *Lord Ellibank*, 10 *Ves.* 88 ; 5 *Cow.* 590 ; 2 *McCord*, 36 ; 2 *John. C. R.* 206.

2d. That the partition and return of the partitioners, made the judgment of the Court of Ordinary, setting aside specific negroes to Bell in right of his wife, vested the marital rights of Bell.—*Davis* vs. *Rhame*, 1 *McCord*, 191 ; *Sansey* vs. *Gardner*, 1 *Hill*, 191 ; *Spear's Eq. Rep.* 150 ; 1 *Hill So. Ca. Chan.* 397 ; *Richardson's Eq.* 6 ; 2 *Gill and John.* 81 ; 3 *Bro. Ch.* 362 ; 2 *Conn. Rep.* 564 ; 1 *Dev.* 456 ; 4 *ib.* 512.

3d. That the judgment upon the partition cannot be attacked in this way for any irregularity, no fraud being charged and no prayer to set aside the judgment, or to arrest the proceedings until the judgment could be reversed in the Court of Ordinary.— *Cole et al.* vs. *Hall*, 2 *Hill N. Y. Rep.* 625 ; 1 *Dev.* 456 ; 3 *J. C. Rep.* 281 ; 4 *ib.* 85 ; 14 *Ohio Rep.* 238.

4th. That Eliza Bell, the wife, claiming the benefit of the partition, is estopped from denying the benefit of it to the creditors.

WILLIAM S. ROCKWELL and BENJAMIN F. HARDEMAN, for the defendant in error.

LUMPKIN, Judge, having been originally of counsel, gave no opinion.

*By the Court*—NISBET, Judge.

The case made in this record involves the doctrine of what is called, in the books, the wife's equity.

The cases in relation to this subject are exceedingly numerous.

The precise extent to which the doctrine of the wife's right in equity to a settlement out of her equitable and legal choses in action goes, we are free to admit, is not satisfactorily settled. Yet we do not hesitate to say, that the right itself is as clearly and as permanently established, both by authority and upon principle, as any known to the equity jurisprudence of England or America. It is difficult to trace its origin and to ascertain the grounds upon which it was at first established.

It owes its birth to the parental interposition of a court of equity, to provide, out of property accruing to a wife, for her support and that of her children, when they have no other sources of maintenance ; against

the desertion, neglect or insolvency of the husband and father. It is the creature, therefore, of a court of equity, and stands upon its own peculiar doctrines; and, according to Mr. Story, we must look to the practice of that court for its proper foundation and extent. The decisions in chancery have engrafted it upon the law of the land. And in this instance, equity has relaxed, as we think most wisely and beneficially, the stern and cruel rigidity of the common law; many of whose technical iniquities are yielding to the broader light and more exalted virtue of this age. That its farther extent should be carefully guarded is true; but in our judgment as now understood and recorded, it is based on reason and is commended by its conformity to the precepts of enlightened humanity. It may not be inconsistent with the severity of a judicial opinion to say, that these equitable rights of women are, in no small degree, to be attributed to that higher estimate of the sex, which has resulted from the extension of education and Christianity. Chancery, standing in *loco parentis*, ought to do what the father himself would do were he in life.

He unquestionably would not apply his earnings to the payment of debts contracted by a son-in-law, (and not contracted upon the credit of such earnings in his possession,) or to minister to his extravagance and dissipation, until he had first provided for his daughter and her children. Equity, occupying his place, will do what she is instructed by reason and humanity he would do. Natural justice asserts the right of a suffering child to her patrimony, as against the right of strangers to her blood; or even of her own husband, when he is, whether by vice or misfortune, incapable of providing for her. And without refining upon this subject, it is not difficult to believe, that, after all, it is upon natural justice that the whole doctrine is based.

At common law, marriage amounts to an absolute gift to the husband of all the goods, personal chattels and personal estate, of which the wife is actually or beneficially possessed at that time in her own right. All these he acquires an absolute property in and dominion over, by the marital right. He does not require the aid of a court of law or equity to establish his claim to her property in possession; he takes it free from any right of survivorship; he may dispose of it during life or bequeath it at his death, and if he does not will it away, it goes to his personal representatives by the law of descent.—*Clancy's Husband and Wife*, 1 to 3; 1 *Coke Litt.* 351 *b*; *Story's Equity*, sec. 1402; 1 *Roper*, 169. But to her choses in action, such as debts due by obligation, or by contract or otherwise, the husband is not absolutely entitled, unless they are reduced into possession during the coverture.—*Coke Litt.* 351, *a*; 2 *Roper on Husband and Wife*, 204, 205; *Clancy*, 3 to 9. In these the husband acquires a qualified property, which may be asserted by action at law, and if not reduced into possession during his life, they survive to his wife, and at her death descend to her representatives.

Such are the rules of the common law, according to which the wife has no right and no process by which to set up right to a provision out of her choses in action, equitable or legal. In the language of Bracton: "*Omnia, quæ sunt uxoris, sunt ipsius viri, non habet potestatem sui, sed vir.*" It is at this point of common-law inability, that equity comes to her relief, and laying its hand upon her choses in action—*her fortune*,

wherever and whenever within its reach—arrests the process of appro-
priation, on the part of the husband and those who claim under him, and
applies them to her use. This equitable right is considered by some of
the authorities as personal to her, and attaches in favor of her children
only in cases where she files a bill for a settlement. In such a case, the
court will carry out the supposed desire of the wife, in providing for her
children, unless she dissents. Of this opinion seems to be Mr. Justice
Story.—*Story's Equity*, sec. 1417 ; 11 *Bligh R.* 104-5-6.

If, however, the wife should die, pending the proceedings, without
waiving a settlement, the children may, by a supplemental bill, enforce
their claim.—*Clancy*, 527–8 ; 2 *Dick.* 604 ; 10 *Vesey*, 89 ; 13 *Vesey*, 1,
8, 9 ; 6 *Sim. R.* 576, 584.

It has been claimed, notwithstanding, that where the mother dies
without having obtained a settlement, or a decree for one, the children
have an original substantive right to a provision.—See *Atherly on
Marriage Settlements*, 355, 356 ; 13 *Vesey*, 7 ; 2 *Atk.* 180 ; 1 *Dick.* 391 ;
The contrary of this seems to be the better opinion.

In all cases where the husband comes into a court of chancery, ask-
ing its aid to acquire the possession of his wife's property, whether it
exists in the form of an equitable or legal chose in action, that court
having acquired the power to act upon the subject matter, will use it to
do equity to both parties. As he seeks equity, it will hold him to do
equity before it will grant it, and upon this principle he is, in such
cases, required to make a suitable provision for her and her children.—
*Story Equity*, sec. 1408 ; 2 *Atk.* 419, 420 ; 2 *Vesey*, 561 ; 1 *Vesey*, 538,
539 ; 1 *Peere Williams*, 459 ; 2 *Johns. Ch. Reps.* 206, 208 ; 1 *Paige R.*
166 ; 2 *Paige*, 308 ; *Clancy on Marr. Women*, 456 to 475.

It is of no consequence in such a case, says Story, "whether the
fortune accrues before or during the marriage ; whether the property
consists of funds in the possession of trustees or of third persons—or
whether it is in the possession of the court, or under its administration,
or not ; for under all these circumstances the equity of the wife will
equally attach to it."—*Story's Equity*, sec. 1408 ; 2 *Roper*, 259.

It will not only be enforced in cases where the husband goes into a
court of equity to acquire possession of her fortune as stated above ;
but it will be enforced where she or her trustee brings a suit in equity
for the purpose of asserting it. This position has been controverted,
and for the reason that the husband is not asking equity, and therefore
the jurisdiction of chancery does not attach ; and the reason of the law
ceasing, the law itself ceases. But it is now beyond controversy
established, that whenever the wife is entitled to this equity, she may
assert it as plaintiff, by bringing a bill by her next friend.—*Clancy on
Marr. Women*, 471 to 475 ; 1 *Roper*, 260, 263 ; 5 *Vesey*, 737 ; 1 *Strange*,
503 ; 1 *Stra.* 238 ; 2 *Cox R.* 422 ; 10 *Vesey*, 574 ; 6 *Paige*, 366.

Chancery will lay hold of the property of the wife as far as may be
within its power, for the purpose of providing a maintenance for her.

It has been made a question whether the wife's equity attaches upon
her legal choses in action, and this is one of the points made in this
case—the property out of which the wife here seeks her equity, is her
distributive share of her deceased father's estate. It is urged by counsel

41

for the plaintiff in error, that this is not an equitable but a legal interest, and therefore the equity of the wife does not attach upon it. Waiving for the present the question, whether her distributive share be or be not an equitable or legal interest, we say, that if it be the latter, the wife's equity will attach upon it in all cases where the husband, or those who claim under him, from any cause whatever, goes into a court of equity to reduce it into possession.

We are aware that such a case is not made by this record—for there was no suit in equity by the husband, or others claiming under him, for this property ; but we find it expedient, notwithstanding, to state the principle as above.

Farther—the English rule in equity is, that where there is a suit in the Ecclesiastical courts for subtraction of a legacy, and there is a married woman to be protected, or a trust to be executed, the court will restrain the suit by injunction.—1 *Atk. R.* 491 ; 1 *Hagg. Eccl. Reps.* 535.

Chancery will restrain a suit in the ecclesiastical courts, by the husband, for the wife's legacy, until provision is made for her.—2 *Kent,* 140 ; 2 *Atk. Reps.* 419 ; 1 *Strange,* 238. Chancellor Kent does not in terms say, but he clearly intimates his opinion, that chancery may, *on just principles,* restrain the husband from availing himself of any means, "either at law or equity," of possessing himself of his wife's personal property in action, unless he make a competent provision for her.

In the State of New York it is settled that equity will, on a bill filed by the wife, restrain the husband or his assignees from possessing themselves of her property at law, until provision is made for her.— *Van Epps* vs. *Van Deusen,* 4 *Paige,* 64 ; *Fry* vs. *Fry,* 7 *Paige,* 462 ; 1 *Hoffman's Ch. R.* 462.

But we do not concede that a distributive share of an estate is in character of a legal chose. Executors and administrators are treated as trustees of the fund committed to their charge, and in that character are subject to the jurisdiction of a court of equity ; and, therefore, an unpaid legacy, ' or a distributive share of an estate, is an equitable interest. Certainly the wife, under coverture, has no right of suit at law for it. She must needs go into a court of equity to secure her settlement. The interest is of equitable cognizance—it is within reach of a court of equity. The right to her equity, in this case, therefore, so far as the character of the property is concerned, does not admit of doubt.

In accordance with these views, it has been held in England that a wife need not wait until suit is brought by her husband, in the Spiritual Court, for a legacy or share in an intestate's estate. She may file at once a bill against him or his assignees for a settlement out of the legacy or share.—*Atherly,* 351 ; *Clancy,* 443 ; 5 *Vesey,* 537 ; 10 *Vesey,* 578.

The assignees in bankruptcy or insolvency of the husband, also his assignees for the payment of his debts generally, and the special assignee, or purchaser from him for a valuable consideration, are bound to make a settlement upon the wife out of her choses in action or equitable interests assigned to them, in the same way and to the same extent and

under the same circumstances as the husband himself would be bound to make one—for it is a general principle that they take the property subject to all the equities which exist between the husband and wife.— 1 *Roper*, 268 ; *Clancy on Marr. Women*, 476. to 493 ; 1 *Mad. Ch. Pr.* 385, 386 ; 2 *Atk.* 420 ; 1 *Peere Will.* 382 ; 1 *ib.* 458 ; *Newland on Contr.* 122 to 129 ; 2 *Vesey, Jr.* 601 ; 4 *Bro. Ch. Reps.* 139 ; 2 *Vesey, Jr.* 680 ; 9 *ib.* 87 ; 1 *Paige*, 620 ; 2 *ib.* 303 ; 4 *ib.* 64 ; 2 *Kent*, 139 ; 2 *Johns. Ch. R.* 206 ; 4 *Gill and Johns.* 282 ; 7 *Dana Reps.* 106 ; *Hill's* (*S. C.*) *Ch. Reps.* 509.

If the wife is already amply provided for under a prior settlement, equity will not interfere, for one of the grounds upon which her equity rests, is the destitution of her circumstances.    Settlement before marriage, the intended wife being of age, declared to be in considera- tion of her present estate, as well as all that which may accrue to her after marriage, will bar her equity ; for the husband, in that case, stands in the light of a purchaser of all her choses in action.—*Clancy Marr. Women*, 512 ; 2 *Vesey, Sen'r.* 677 ; 9 *Vesey*, 96 ; *Atherly*, 358. And if an adequate settlement is made upon the wife *after* marriage, in consideration of her equitable property, it will exclude her from farther provision.    But in this case the court will inquire into the adequacy of the settlement, and if inadequate, a farther provision will be awarded her.—*Clancy*, 510, 520 ; *Atherly*, 359.

It seems, too, that a wife may waive her equity-in some cases in open court, although Lord Hardwick, in one instance, refused to permit it to be done.—*Clancy*, 510, 515 ; 2 *Vesey, Sen'r.* 579.

Thus have I stated what appears to me to be the principal rules which constitute the doctrine of the wife's equity.    They run out into various details which I do not propose to trace.    It remains to apply them with greater particularity to the case in hand.    To do so, it is necessary to re- capitulate the facts ; premising that the able counsel who argued this cause for the plaintiff in error, does not deny the general doctrine on this subject, but denies its applicability to the facts disclosed in this record.

The father of Mrs. Bell died intestate, leaving an estate in negroes and other property, in which she was interested as distributee. Administra- tion was taken upon his estate.    William Jewell, the administrator, ap- plied to the Court of Ordinary of Oglethorpe county, at an adjourned session, for the appointment of commissioners, under our statute, to di- vide the negroes belonging to the estate, and they were accordingly appointed.    Of this application, it does not appear, from the record, that either Mrs. Bell or her husband had notice.    The commissioners divided the negroes into as many portions as there were distributees, *setting apart*, to use their own language, one of them to William J. Bell, in right of his wife Eliza.    Neither Bell nor his wife were present at the division, and the return of the commissioners declares that they, not being present or represented, their share was left in the hands of the administrator.    The return was recorded on the books of the Court of Ordinary.    No order was passed, making it the judgment of the Court of Ordinary, and no refunding bond was given.

The property was at no time out of the possession of the administra- tor, but continued in his possession until it was levied upon, in his hands,

as the property of W. J. Bell, and taken possession of by the sheriff. To avoid the expense of keeping the negroes until they could be brought to sale, after tedious litigation it was agreed, in writing, between Mrs. Bell and the creditors of her husband, that they should be sold at once, and that the money should remain in the hands of the sheriff, subject to the same rights which she might have on the property if not sold. Mrs. Bell, then, by her next friend, filed her bill, charging all these facts, and also that her husband was wholly insolvent, and that herself and children were without the means of support—asking an injunction against the creditors, and praying that so much of the money in the hands of the sheriff, and of the remainder of her interest in her father's estate, as might be necessary, be set apart, in the hands of trustees, for the special use of the complainant and her children.

The defendants demurred to the bill upon several grounds, all of which were overruled by the presiding judge. The questions made occurring on demurrer, all the statements in the bill are admitted to be true.

The principles stated in the previous part of this opinion, are considered as sustaining the court below on all the points made in the assignment, except as to the questions growing out of the partition of the property, and need not be again, or with further minuteness of application, repeated. The exceptions founded upon the action of the partitioners, although several, resolve themselves into one, and may be stated as follows : " The marital rights of Bell, fully attached upon the property, by virtue of the division of the estate by commissioners appointed by the Court of Ordinary, setting apart Mrs. Bell's portion to him in right of his wife, and it was, therefore, liable to pay his debts ; that, by the return of the commissioners, and the acceptance of it by the Court of Ordinary, being, by such acceptance, made the judgment of that court, the portion set apart to Bell, in right of his wife, vested absolutely in him, and is not subject, therefore, to his wife's equity ; and that the presiding judge erred in ruling contrary to these positions."

These were the grounds relied upon mainly in the argument ; the points made as to the regularity of the proceeding under the order of the court, for a division, and as to the refunding bond, are considered as involved in these grounds. It occurs, then, to the court, that the only question for them to determine is this, to wit : According to the facts, was there such a *reductio in possessionem*, by Bell, the husband, as vested the ownership of the property in him, as against his wife's equity ? for, word the exception variously as you may, in our judgment, this is the only point left in the case.

In relation to marital rights, so far as they are concerned with an equitable interest or chose in action, we remark that they are inchoate. They, as against the wife's equity, amount to nothing ; and as against her right of survivorship, they are to be considered as a mere right to reduce into possession. The right of property in them exists upon condition ; the absolute ownership can be only upon compliance with it. If, in the one case, the wife asserts her equity, or, in the other, the husband dies before he gets possession, his marital right is as though it

had never been. All the questions between the wife's equity and the husband, or his assignees, turn upon the possession. They are to be settled upon a fact. The question of possession may be a mixed one of law and fact. It may be, and it is here, an inquiry whether, upon a given state of facts, there is, in the eye of the law, a sufficient possession. But in no case can the rights of parties, thus situated, be adjudged, without a determination of the great issue, was there or not a reduction into possession? Whilst, in this case, we do not hold that there must have been a tradition, by the administrator, into the husband's hands, or a manucaption on his part; yet we do believe there must be an *actual* possession in the husband. A delivery to his agent would be sufficient; a settlement with the administrator—a discharge executed to him by the husband—and afterwards a consent that the property remain with him. So, in many cases, where the property, from its character or its situation, does not admit of immediate personal reception; in short, any acts done, which show the intent of one party to abandon, and the other party to assume, possession, will be sufficient. But, in all cases, there must be facts exhibited to show that the administrator does, in truth, part with the possession, and that the husband does, in fact, with his consent, assume it. Chancellor Harper (in *Perryclear* vs. *Jacobs*, in 2 *Hill's Ch. Rep.* 509) speaks of the possession required, as an "*actual* possession. Not a legal right, or a property vested by legal implication, but a right, consummated by an actual possession. Such, too, we think, is the view of all the authorities. We deny that, in this case, the property vested in Bell, by operation of law, so as to defeat the wife's equity; and we also deny that the facts show actual possession in him, and are of the opinion, that the decision of the learned judge on the circuit bench was right. The administrator holds the legal title in the property of his intestate; he may aliene or encumber it. Does the return of the commissioners divest it? The object of their appointment is not to divest the title of the property, but to separate and apportion it. Their return effects a severance, and ascertains, not only the amount of each share, but (in case of slaves) designates the specific individuals which belong to each. We are not, however, prepared to say, that it is conclusive as to these things. It certainly does not divest the administrator's legal title. Would the facts of this case be sufficient, upon which to maintain an action of trover, in favor of Bell against him? We apprehend not. Would not the plaintiff, in such a suit, be required to show, not only the division of the slaves but an acquittance to the administrator?

The statute of Georgia requires, before the assignment to the distributees of their respective portions, they shall execute, to the administrator, a bond conditioned, to refund their respective proportion of the debts which may be established against the estate. In the action of trover, we are clearly of opinion, that before the plaintiff could recover, he would be held to show the execution or tender of the refunding bond. The record does not show that a bond was given, but the contrary. It appears, from the record, that Bell and wife, not being present or represented, their share was left with the administrator, where it remained until it went into the custody of the law. There was, therefore, no

assignment of it and no bond. The complainant, in the bill, does not claim her equity, under the division of the commissioners and the judgment of the Ordinary thereon. She neither seeks to set it aside nor to affirm it. Her equity rests upon higher ground; it exists anterior to, and independent of it; it attaches upon the property itself, and is spoken of by learned commentators as a lien. Wherever equity can reach the property, if not reduced into possession, before its interposition, by the husband, she will lay her hand upon and hold it, until provision is made for the wife. All, then, the complainant avers, or is interested in showing, as regards the proceedings under the statute, is, that the facts do not prove a reduction into possession before she filed her bill. (This, by the by, in answer to the argument of counsel, to the effect, that a party who claims, under a judgment, cannot attach it for irregularity.)

Again: if the proceedings under the statute vested the property, by operation of law, in Bell, then is the administrator discharged fully of his trust, and if, being still in possession of the property, he makes way with it, he and his securities would not be liable on his bond. We cannot hold to a position, whose results would be thus absurd and unjust. We are of opinion that the property in Mrs. Bell's share, according to the facts of the case, did not vest in her husband. It does not help the matter to say, that the division made the share of Mrs. Bell liable to a levy and sale, and that the purchaser would not get a better title than Bell had. All this may be true, and, so far as the argument affects this case, the reply is, that admitting this to be so, the wife's equity may be asserted equally and at all times against the husband, his assignees, his creditors and purchasers under execution against him. She will not be compelled to stand by until a sale, and then go upon the purchaser, who may buy subject to her equity. Equity will give her relief by enjoining creditors, and settle her rights, whenever the property is within its reach.

As to the possession, the bill states that Bell never had the possession, and that it never was out of the administrator. The demurrer admits the truth of these statements, and perhaps it would be safe to rest this point here. But if it be, as it was contended, that the bill and its exhibit, viz., the return of the commissioners and the judgment of the court thereon, prove that there was possession, then let us look into that exhibit and see how the matter stands. There was in truth no order taken to make the return the judgment of the court—it was spread upon the records however, and we are willing to admit that this is presumptive proof of its having been made the judgment of the court. Now, the judgment is co-extensive only with the return—in other words, the return is the judgment. What, then, does the return prove, as to Mrs. Bell's share? It proves that certain slaves were *set apart* for Bell in right of his wife, not *assigned* to him. Just as the minor child's part was *set apart*, there being no guardian to receive it. It proves, for it says, that there was no representative of Bell to receive it, and for that reason the return declares that it *was left with the administrator*. It was left with him, to be paid over to Bell, beyond all doubt, when he should apply for it and give the bond which the law requires. And we must believe that it was the intention of the commissioners that the administrator should keep the property, until the law was complied with. What, then, does

B ell et al. *vs.* Bell.

the court adjudge? Why, among other things, that the *property is in the hands* of the administrator. So far, therefore, from the proceedings showing possession in Bell, we are satisfied that they, on the contrary, show possession in the administrator; and it continued in him until the property was seized by the sheriff. This was property which from its nature and position was capable of actual delivery; we think there was no *actual* possession, or proof of anything equivalent to it, and confirm the judgment of the court below.