THE AMERICAN FREEHOLD LAND AND MORTGAGE COMPANY, OF LONDON, LIMITED, APPELLANT, VS. SALLIE L. MAXWELL, APPELLEE.

1. Where a married woman claims by purchase, property levied upon under an execution against her husband, she is held to full and strict proof that it was paid for with her money; and in the absence of such proof the property is presumed to be her husband's, or the conveyance will be considered a voluntary one.

2. Where by law the title to a married woman's personal property vests in her husband in all ceses where the husband reduces same to possession during coverture, the title to property purchased by the husband in his own name during coverture, with personal property of the wife so reduced by him to possession, will not be affected with any implied trust in favor of the wife, and a subsequent conveyance of the property by the husband to the wife in consideration of a supposed implied trust will be treated as a voluntary conveyance or postnuptial settlement.

3. A husband's declarations made subsequent to a conveyance of lands from him to his wife, to the effect that the lands so conveyed were purchased by him with money or property of the wife, are not sufficient to establish a purchase with funds belonging to the separate estate of the wife.

4. A simple failure to record a conveyance of real estate does not of itself render the instrument fraudulent as to creditors, but it is

one circumstance which, in connection with others, may avoid the deed. Where the instrument is a voluntary conveyance from a husband to his wife, and it is withheld from record until after equities of the husband's creditors without notice attach to the property conveyed, either by reason of some lien, or because of credit extended upon the faith of the grantor's possession and apparent ownership of record of the property conveyed, the conveyance will be invalid as against such creditors.

·5. A court of equity has no jurisdiction, at the instance of a mere mortgagee in possession whose mortgage is duly recorded, to enjoin a sale of the mortgaged real estate under an execution issued upon a junior judgment against the mortgagor.

Appeal from Circuit Court for Alachua county.

STATEMENT.

On May 29, 1891, appellee filed her bill against appellant in the Circuit Court of Alachua county, alleging that she was the widow of one William A. Maxwell, deceased; that appellant was proceeding to sell under execution upon a judgment obtained by it in the Circuit Court of Alachua county, against the administrator *de bonis non* of William A. Maxwell, certain lands described in the bill; that appellee was in possession of said lands, and owned an undivided four-fifths interest in fee simple therein, acquired by a conveyance executed to her by her husband in payment of a large indebtedness due by him to her, and for money which appellee had loaned to C. P. Crawford, who secured same, together with a small sum due her husband, by a mortgage executed to the husband covering said lands; and upon subsequent foreclosure of the mortgage her husband "bought in" said lands in his own name as mortgagee; that on October 27, 1877, her husband, being then solvent, for a valu-

able consideration conveyed a four-fifths interest in the lands to appellee; that the lands were so conveyed long anterior to the making of appellant's debt; that on October 5, 1883, her husband, being indebted to appellee in the sum of $600, executed to her a mortgage to secure same, upon his remaining one-fifth interest in said lands; that appellee was in the open, adverse, and quiet possession of said land as the legal and equitable owner of same, before the recovery of appellant's judgment; that appellant owned no property in this State at the time of filing the bill; that a sale under said execution would cloud appellee's title to the land, and an injunction against such sale was prayed.

The deed from W. A. Maxwell to appellee, attached as an exhibit, after reciting that Charles P. Crawford, in the year 1860, did execute and deliver to W. A. Maxwell a mortgage deed upon the same lands described in the bill, to secure the payment of money loaned; that the mortgage had been foreclosed and the title to said lands vested in W. A. Maxwell; that four-fifths of the money loaned to said Crawford belonged to and was the property of appellee, and one-fifth the property of said William A. Maxwell, proceeded as follows: "Now, for and in consideration of the premises above set forth, said William A. Maxwell does hereby sell and convey to his said wife Sallie L. a four-fifths (4-5) undivided interest in and to the above described lands, to be held, enjoyed, used and disposed of by his said wife as her separate property." This paper was dated October 27, 1877. It was under seal, and executed in the presence of two subscribing witnesses, both of whom died before the testimony in this case was taken. It was acknowledged October 5, 1883, and recorded in Alachua county February 24,

1886. The mortgage referred to in the bill was dated October 5, 1883, acknowledged same day, and recorded February 24, 1886, and purported to convey an undivided one-fifth interest in the lands described in the bill as security for the payment of a promissory note of even date for $600, due one year after date. A temporary injunction was issued May 29, 1891.

On December 9, 1891, by leave of court, appellant filed its answer, in lieu of a former one stricken on motion, by which it was admitted that appellee was the widow of William A. Maxwell; that appellant was proceeding to sell the lands under execution as alleged in the bill; but denied that appellee owned any interest whatever in said lands. It denied that she bought or paid for said lands, or loaned any money to C. P. Crawford, which was secured by the mortgage from Crawford to Maxwell, and alleged, that Crawford, on October 25, 1870, was seized and possessed of the lands in question, and executed to William A. Maxwell a mortgage thereon to secure $10,500, "then and there wholly due by said Crawford to said Maxwell, and to no one else;" that this mortgage was in due course foreclosed, the property sold, and purchased by William A. Maxwell on January 5, 1874, to whom a deed was duly executed in pursuance of such sale, which deed was recorded March 4, 1874; that one J. J. Thompson May 15, 1871, recovered judgement against said C. P. Crawford, and the land in controversy was under the execution issued upon this judgment, together with other executions against Crawford, sold by the sheriff of Alachua county, in June, 1873, at which sale Thompson purchased and received a deed, which was duly recorded, and on July 3, 1878, conveyed the land to said William A. Maxwell, by deed

JUNE TERM, 1897.   · 493

American Freehold L. & M. Co. v. Maxwell.—Statement of Case.

recorded July 11, 1878.   It was further alleged that William A. Maxwell, by the conveyances mentioned, became vested exclusively with the fee simple title to said land, went into actual possession of same, and continued therin until the date of his death, cultivating, improving, and renting the lands, held himself out to the world as owner, instituted suits in his own name to quiet titles and collect rents, not acknowledging or acquiescing in any pretended right or title of the appellee in or to said lands.   It denied that W. A. Maxwell, in 1877, or at any other time, being then solvent, conveyed in good faith and for a valuable consideration, a four-fifths interest in said lands to complainant, or that said Maxwell executed the mortgage attached to the bill in consideration of a debt due by him to complainant as alleged.   ·It denied that appellee was at the rendition of appellant's judgment, or at the time of filing the bill, in possession of the lands in controversy; and alleged that the administrator of W. A. Maxwell had been in possession thereof from the date of his appointment.   It alleged that on April 26, 1882, William A. Maxwell made application in writing for a loan, and represented therein that he owned eighteen hundred acres of land in Florida free from incumbrances; and relying upon this representation defendant loaned said W. A. Maxwell $4,400 (which was the debt upon which defendant's execution was obtained, under which it proposed to sell the land), and that on November 26, 1883, on the representation of said W. A. Maxwell that he owned the land in controversy, that same was valuable, and becoming more so, defendant granted an extension of said indebtedness.   The answer contained a general allegation that if the deed and mortgage of W. A. Maxwell

494 SUPREME COURT

American Freehold L. & M. Co. v. Maxwell.—Statement of Case.

to appellee were executed and acknowledged either on the days named, or at any other time, they were each without consideration, never delivered, the actual possession thereof was continuously retained by W. A. Maxwell "and the said acts and doings of the said Maxwell and his said wife, the complainant, were for the purpose of hindering, delaying and defrauding creditors, and that said pretended deed and mortgage to the complainant were and are illegal, null and void." The general replication to this answer was filed January 8, 1892, and on the same day the cause was referred to a master to take testimony.

C. P. Crawford, complainant's witness testified that he was admitted to practice law in this State in 1868, but that he removed to the State of Georgia, and has been practicing law in that State since 1871, and is familiar with the laws of Georgia in reference to marital rights; that prior to September, 1866, the husband's marital rights attached to all acquisitions of property by a wife, which he reduced to possession during coverture, but no rights attached to such as he did not so reduce to possession; that since that date the wife can acquire property in all respects as if she were *feme sole*. Further, that he was a brother of appellee, and owned the property in dispute from 1863 until they were sold under foreclosure of mortgage by W. A. Maxwell. This witness further testified that his father, Joel Crawford, died in 1858; that witness was his executor, and appellee one of the heirs and distributees of his estate; that in the summer of 1863 witness purchased the land in dispute from Phillip Dell, administrator; that in November, 1863, witness had in possession $13,000 belonging to appellee as an heir and distributee of Joel Crawford,

JUNE TERM, 1897.  495

American Freehold L. & M. Co. v. Maxwell.—Statement of Case.

deceased; that witness went to see appellee and her husband, W. A. Maxwell, at Americus, Ga., and stated to them that he had this money for them, but would like to use it to pay for some Florida purchases which witness had made, including the lands in controversy. Appellee and her husband consented for witness to keep the money, use what he desired, and invest the balance for them in Florida land. Witness used about $10,000 of the amount in paying for the land in controversy, but failing to invest the balance, returned afterwards, giving his note for the $10,000 used. In December, 1866, witness borrowed of W. A. Maxwell $500, giving a note for it. About 1870 witness took up both notes, consolidating them into one, and gave the mortgage, mentioned in defendant's answer, to W. A. Maxwell to secure its payment. Witness moved to Georgia in February, 1871, and hearing that a number of petit suits had been instituted against him in Florida, he advised W. A. Maxwell to foreclose the mortgage; that W. A. Maxwell was unacquainted with the premises in controversy, or its value, and frequently conversed with witness concerning them. In these conversations Maxwell always recognized that the property in controversy belonged to appellee exclusively.

Mrs. Maxwell testified that her husband died in August, 1888; that C. P. Crawford, her brother, was executor of her father's will, and paid witness her "divisions" of the money from her father's estate; that C. P. Crawford then borrowed her money from her husband, W. A. Maxwell, and gave witness, through her husband, a mortgage on the land in controversy, and thereby the land was secured to her;

that knowing it was her money, Mr. N. A. Smith (one of the witnesses to the deed and mortgage) advised her husband to turn over to witness the land in controversy; and, acting upon this advice, her husband, in October, 1877, delivered to witness, in Smith's office, the deed to this property which witness placed in the custody of Mr. Smith, where it remained until his death.

The deed and mortgage were executed in the State of Georgia, where the parties resided. Mrs. Maxwell and her husband were never residents of Florida, but resided in Georgia during all the transactions relating to this land.

From the evidence it further appeared that the administrator of W. A. Maxwell was never in possession of the land; that the agents for and tenants of the lands in controversy, though dealing directly with W. A. Maxwell, have all understood from some uncertain date that the land was the property of Mrs. Maxwell, the husband frequently disclaiming any interest therin except as agent for his wife; that the rents of these lands were collected in the name of the husband, but that W. A. Russell frequently refused to give mortgages on the land to Georgia creditors because the property belonged to his wife, though the witnesses are very indefinite as to the dates of these refusals. It was further shown that in April, 1882, W. A. Maxwell's Georgia lands were encumbered by mortgages amounting to $3,000; that in 1883 he was procuring extensions from some of his creditors, and in 1886 the inference is very strong that W. A. Maxwell was insolvent.

On April 26, 1882, William A. Maxwell made application in writing for a loan of $4,400, therein propos-

JUNE TERM, 1897.        497

American Freehold L. & M. Co. v. Maxwell.—Statement of Case.

ing to secure the loan by mortgage on twenty-two hundred and ninety acres of land in Lee county, Georgia, giving a minute description thereof. In answer to a question therein : "How much, if any, lands do you own other than those herein described, and where is it situated, and is it free from incumbrance?" Mr. Maxwell stated : "eighteen hundred acres in Florida three hundred and seventy-five acres in north Georgia; all free from incumbrance." On June 27, 1882, in pursuance of further negotiations, W. A. Maxwell executed five written obligations for $880 each, two due October 1, 1883, one October 1, 1884, one October 1, 1886, and one October 1, 1887, and a mortgage on the twenty-two hundred and ninety acres of Georiga land to secure same. On November 26, 1883, W. A. Maxwell wrote to the holders of these notes and mortgage, requesting an extension on account of the failure in the cotton crop, and therein stated : "I have some eighteen hundred acres of valuable land in Florida, near the town of Newnansville, in Alachua county. The Sav. Fla. & Western R. R. will pass within a short distance of my land, and as soon as the road is completed there will be a demand and I expect to sell and get rid of all my embarrassments." The land referred to in this letter was the same as that in controversy. In March, 1886, suit was instituted upon this indebtedness in the Circuit Court of the United States for the Southern District of Georgia, and such proceedings had thereunder that on October 5, 1886, a judgment was recovered against W. A. Maxwell for the principal of the indebtedness, together with other sums for interest and attorney fees, upon which execution issued. The mortgaged property having been sold January 4, 1887, and being insufficient to pay the debt,

498 SUPREME COURT.

American Freehold L. & M. Co. v. Maxwell.—Statement of Case.

suit was instituted against the administrator *de bonis non* of the estate of W. A. Maxwell, deceased, for the deficiency, in Alachua county Circuit Court, where a judgment was obtained February 23, 1891, for $5,282-.77, upon which execution issued as before stated. It was also shown in evidence that tenants on the lands in controversy had given notes for rent to W. A. Maxwell individually; that Maxwell's agent had on one occasion in January, 1888, brought a distress for rent against a tenant on the place in the name of W. A. Maxwell; that the lands from 1884 to 1890 had been assessed either in the name of W. A. Maxwell or his agent; that J. J. Thompson, in 1776, recovered judgment in ejectment against a tenant on the lands for all the premises in controversy, whereupon W. A. Maxwell filed a bill in his own name against Thompson to quiet the title, though this was prior to the alleged date of the deed to Mrs. Maxwell. Thompson vs. Maxwell, 16 Fla. 773.

The note which the mortgage from Crawford to Maxwell purported to secure was dated October 25, 1870, due January 1, 1872, for $10,500, payable to William A. Maxwell, without interest. Immediately after the signature to this note is a memorandum as follows : "P. S. I have consolidated the three notes with interest to January 1, 1872, * * * C. P. C." Other facts of the case are stated in the opinion.

The court below on final hearing granted a perpetual injunction as to a four-fifths interest in the land in controversy, and required appellant to sell the remaining one-fifth interest subject to appellee's mortgage, from which this appeal was entered to our January term, 1894.

The other facts in the case are stated in the opinion.

*W. W. Hampton* and *A. W. Cockrell & Son*, for Appellant.

*S. Y. Finley*, for Appellee.

CARTER, J.: ·

I. It is claimed by appellee that the circumstances leading up to and connected with the acquisition of title by William A. Maxwell to the lands in controversy, raised an implied trust in favor of appellee for a four-fifths interest in the lands in controversy; and that the deed subsequently executed by her husband in consideration of this trust was based upon a valuable consideration, and is, therefore, valid in equity under our decisions in Waterman vs. Higgins, 28 Fla. 660, 10 South. Rep. 97; Claflin vs. Ambrose, 37 Fla. 78, 19 South. Rep. 628; and Hill vs. Meinhard, 39 Fla. 111, 21 South. Rep. 805. But we think she has failed entirely to show that any part of her money was invested in this land. We have several times held that a married woman claiming by purchase property levied upon by virtue of an execution against her husband is held to full and strict proof that it was paid for with her money, and that in the absence of such proof the property is presumed to be her husband's (Fairchild vs. Knight, 18 Fla. 772; Stoors vs. Stoors, 23 Fla. 274, 2 South. Rep. 368); or the conveyance will be considered a voluntary one (Alston vs. Rowles, 13 Fla. 117; Claflin vs. Ambrose, 37 Fla. 78, 19 South. Rep. 628). The appellee and her husband being citizens of the State of Georgia, the title to the money loaned Crawford in that State during their residence there, must

be determined by its laws. The evidence is very clear·· that under the laws of that State, a married woman's· acquisitions prior to September, 1866, vested in her· husband in all cases where he reduced the same to possession during coverture. Not only was this money reduced to the husband's possession prior to September, 1866, by loaning it to Crawford and taking notes· for the same in the name of the husband only, but in 1870 the old notes were taken up and a new one given to the husband, and a mortgage executed to him alone· on this land to secure the same, which became the basis of the title subsequently acquired by the husband at foreclosure sale in 1874. The title of the husband· became absolute as to property acquired by the wife· prior to September, 1866, by reducing it to possession· during coverture, either before or after September, 1866. Early vs. Sherwood, Dudley (Ga.) 7; Bell vs. Bell, 1 Ga. 637; Bryan vs. Rooks, 25 Ga. 622, S. C. 71 Am. Dec. 194; Sperry vs. Haslam, 57 Ga. 412; Sterling vs. Sims, 72 Ga. 51; Alston vs. Rowles, 13 Fla. 117. There is no evidence that Mr. Maxwell ever rec-· ognized any right of his wife in the money loaned to Crawford until 1872, long after it was reduced to his· possession by unequivocal acts. The husband's subsequent declarations, that the money loaned, or that the land acquired in partial payment thereof, belonged to the wife, are not sufficient to establish the contention that the purchase was made with funds belonging· to the separate estate of his wife. Alston vs. Rowles, 13 Fla. 117. We do not think any implied trust arises in favor of appellee, because the money of her husband only was invested in this land. The deed executed to her in 1877 is, therefore, a voluntary conveyance or post-nuptial settlement, as no considera-

tion other than the supposed implied trust induced its execution. Boulton vs. Hahn, 58 Iowa, 518, 12 N. W. Rep. 560; Meredith vs. Citizens National Bank, 92 Ind. 343; Bolling vs. Jones, 67 Ala. 508; Joiner vs. Franklin, 12 Lea, 420; Coleman vs. Burr, 93 N. Y. 17, S. C. 45 Am. Rep. 160; Suber vs. Chandler, 36 S. C. 344, 15 S. E. Rep. 426; Hart vs. Leete, 104 Mo. 315, 15 S. W. Rep. 976; Bump on Fradulent Conveyances, sec. 280; Clarke vs. King, 34 W. Va. 631, 12 S. E. Rep. 775.

II. The deed from Mr. Maxwell to appellee can not be sustained as a voluntary conveyance, or post-nuptial settlement. This deed purports to have been executed in 1877 in the presence of Thos. M. Eden, and N. A. Smith, Notary Public. On October 5, 1883, the grantor appeared before said notary and acknowledged its execution, but it was not filed for record until February 24, 1886. In the meantime W. A. Maxwell remained ostensibly in possession of the premises until his death, exercising acts of ownership over the property, though notifying his agents and tenants that the property belonged to his wife, representing to appellant as a basis of credit originally, and to procure an extension of the debt subsequently, that he owned the land, listing it for taxation in his own name, bringing suits in his own name to recover rents, perfecting the title by taking deeds in his own name and placing same upon the public records. These circumstances collectively lend support to the theory advanced in appellant's answer, that this deed was not executed on its purported date, but was executed in 1883 or 1886, and antedated. It is true that under our statutes the property of the wife, even if derived from him, remains in the care and custody of the husband,

and that he is entitled to the rents and profits thereof, but this only emphasizes the necessity of giving general and public notice of such a change in the title, by recording the conveyance, if authorized to be recorded, in order that creditors may not be deceived into extending credit to the husband upon the faith of his recorded title, and possession apparently held under it. No excuse for failure to record this deed is attempted to be shown. Appellee testified that it was delivered to her in 1877, and another witness said Mr. Maxwell told him in 1881 that he had deeded the land to his wife. Even after it was acknowledged for record it was withheld for more than two years. A simple failure to record a conveyance of real property, does not of itself render the instrument fraudulent as to creditors, but it is one circumstance which, in connection with others, may avoid the deed. Where the instrument is a voluntary conveyance from husband to wife, and it is withheld from record until after equities of the husband's creditors without notice attach to the property, either by reason of some lien or because of credit extended upon the faith of the grantor's possession and apparent ownership of record, of the property conveyed, the conveyance will be invalid as against such creditors. Fetters vs. Duvernois, 73 Mich. 481, 41 N. W. Rep. 514; Coates vs. Gerlach, 44 Pa. St. 43; Wait on Fradulent Conveyances, sec. 235; Warner vs. Watson, 35 Fla. 402. In this case the conveyance was from a husband to his wife, without consideration, withheld from record without explanation for ten years and until the husband had become practically insolvent, there was never any decided change in the possession of the property conveyed until the husband's death in 1888, the appel-

lant extended credit to the husband long before the record of the deed upon his representation that he owned this property, and that it was unincumbered which representation, according to the records of Alachua county at the time, were apparently true. Add to this the circumstances in evidence tending to show that the deed was not executed in 1877, but probably in 1883 or in 1886, after appellant's debt was contracted, and we think it very clear that the appellee failed to sustain her case by evidence sufficient to justify the decree of the chancellor.

III. The bill of complaint sought to enjoin the sale under appellant's execution, not only of the four-fifths interest in the premises claimed as the property of appellee, but also of the remaining undivided one-fifth interest, as to which appellee claimed no title, but only the lien of a subsisting mortgage. The bill alleged that this mortgage was given appellee by her husband to secure a sum of money loaned by her to him; that it was duly recorded in Alachua county long prior to the entry of the judgment upon which appellant's execution issued; that appellee was in possession of the mortgaged property, and that appellant had no property in this State. No other facts were stated or relied upon as authorizing the injunction as to this one fifth interest.

A court of equity has no jurisdiction at the instance of a mortgagee, a mere lienholder, to enjoin a sale of mortgaged real estate under an execution issued upon a junior judgment against the mortgagor, simply because the mortgage is a prior lien upon the property, and the mortgagee is in possession thereof. The mortgagee is not the owner, even if in possession, of the mortgaged property. He has no title to be clouded

by a sale of the property under execution. He has a mere lien under which the property may by a court of equity be ordered sold at public auction to pay his debt, at which sale he or some third person may become the purchaser. His mortgage being of record prior to the rendition of the judgment, any sale under the execution can only pass the title to the mortgaged property, subject to the mortgage if valid. If the real estate is sold, it can not be removed; nor is it rendered less valuable by a sale under execution. If a prior mortgagee were allowed to enjoin sales by subsequent lienholders, it would, at his election, as against the demands of other creditors, place in his hands a perpetual shield and in case the mortgaged property in impenetrable armor. If, under any circumstances, a mere mortgagee in possession is entitled to an injunction to protect mortgaged real estate from sale under execution against the mortgagor these circumstances are not disclosed in this record. Weidner vs. Thompson, 66 Iowa, 283, 23 N. W. Rep. 670.

The decree is reversed with directions to dismiss the bill of complaint.