JOHN KILGOUR *vs.* RICHARD H. MILES, and JOHN M. GOLDSMITH.—*December*, 1834.

Upon a contract to deliver merchandize at a future day, if the day mentioned be in fact Sunday, in analogy to the usage in other commercial cases, the day of delivery, according to the legal effect of the contract, is Saturday.

In pleading upon such a contract in an action brought to recover damages for a failure to deliver, the plaintiff having agreed to pay the price of the article contracted for on its delivery, he must aver his readiness to pay at the time and place, when and where, by the legal construction of the contract the delivery was to be made.

The "Sabbath," "the Lord's day," and "Sunday," mean the same day in all Christian communities, and includes the twenty-four hours next ensuing the midnight of Saturday.

It is the duty of the court to notice the days of the week on which particular days of the month fall.

Upon demurrer the court looks for the first defect in the pleadings.

This court does not award a *procedendo* when the judgment of the county court against the plaintiff for a defective declaration upon demurrer, is affirmed.

APPEAL from *St. Mary's* county court.

This was an action of *Covenant*, brought by the appellant against the appellees, on the 12th of July, 1832, on the following contract, under the hands and seals of the parties.

"We, *John M. Goldsmith*, and *Richard H. Miles*, promise and oblige ourselves to deliver to *John Kilgour*, or his agent in *Baltimore*, on the first day of July next, three thousand bushels of good merchantable corn ; and he, the said *Kilgour*, promises and obliges himself, his heirs and assigns, to pay for the same forty-five cents per bushel, on the delivery of the above corn. May 11th, 1832."

The plaintiff in his declaration averred, that he "was ready and willing to accept and receive the said corn at the rate or price aforesaid, at the time and place aforesaid, specified in the said articles of agreement, that is to say, at the city of *Baltimore*, on the first day of July, 1832, and was likewise at the time and place specified in the said articles of agreement, ready and prepared to pay for the said corn upon its

delivery the rate or price, so as aforesaid agreed upon, in the said articles of agreement, to wit, the sum of forty-five cents per bushel; yet the said defendants not regarding," &c.

The defendants pleaded "that they had the said corn ready to be delivered, according to the said agreement, but that they could not perform the same because it would have been against the laws of the land for them to do so, inasmuch as the 1st day of July, named as the day of performance thereof, was a Sabbath day, and this they are ready to verify"—wherefore they pray judgment, &c.

There was a general demurrer and joinder in demurrer to the plea; which the county court ruled good, and gave judgment for the defendants. The plaintiff thereupon brought the record by appeal to this court.

The cause was argued before BUCHANAN, Ch. J., and DORSEY, and CHAMBERS, J's.

*John M. S. Causin,* for the appellant.

1. The plea is contradictory, double, and uncertain. The *same* plea cannot present inconsistent defences, though different pleas may. 4 *Term. Rep.* 194.

In the commencement of the plea in this case the validity of the contract is admitted, and an excuse for its non-performance relied upon; whilst the conclusion avoids it altogether. 6 *Com. Dig.* 132.

This plea is so framed as to leave the court in doubt whether the defendants rely upon an excuse for their failure to perform the contract; or whether they assail its validity altogether; and this uncertainty renders it bad on demurrer. 3 *Durn. and East.* 185. 1 *Com. Dig.* 141. 2 *Johns. Cas.* 312. A plea susceptible of two intendments shall be taken most strongly against the party pleading it. 1 *Chitty's Pl.* 463.

The averment that the day was a "Sabbath," does not necessarily mean that it was Sunday. The original and

true meaning of Sabbath is a day of rest merely, and not a day consecrated to religious exercises.

2. A covenant will be enforced against its letter in obedience to its spirit. 1 *Esp.* 118.

If the contract in this case could not be performed on the day stipulated, it should have been performed on the day before or after; that is, Saturday or Monday. 2 *Con. Rep.* 69. And the defendant should have tendered the corn on one of those days; and his plea should have been shaped accordingly. Every circumstance constituting the excuse should have been averred. This plea merely excuses a literal, but not a substantial performance of the contract. The validity of the contract itself cannot be questioned, because it was not *intended* that it should be performed on Sunday. That was an event wholly unanticipated by the parties, and cannot consequently impair their contract.

Under the act of 1823, the facts disclosed by the plea cannot destroy the obligation of the contract, though they may suspend the performance. 2 *Con. Rep.* 74, 75. 5 *Bac. Abr.* (*Tender H.* 2.) 8 *Serg. and Low.* 230. *Chitty on Bills*, 260. 4 *East.* 501. 5 *East.* 265.

*Johnson*, for the appellees.

The covenants of this contract are mutual, and neither can sue the other without performance, or excuse for the non-performance on his part; and the plaintiff by his pleadings must show such performance or excuse. *Chitty Pl.* 310, 375, 278, (*New Ed.*) In the present case the plaintiff does not aver a performance, or readiness to perform, according to the *legal effect* of the contract, but according to its express stipulations; that is, on the *very day* mentioned in the contract. The question then is, does the declaration allege such a readiness to perform as the law will sanction and recognize; for if it does not, the result is the same, as if such averment had been wholly omitted; and then, undoubtedly, it would be bad on demurrer. 6 *Harr. and Johns.* 401. It was incumbent on the plaintiff to aver in his declaration a readi-

ness to perform his contract, either on the day preceding, or succeeding that named; and also, why he was not ready to perform on the day stipulated, and in the absence of such averments he cannot recover.

The plea has been charged with duplicity, and with having an improper conclusion; but if this be so, it can only be reached by a special demurrer. When a plea contains matter in bar, the court will give the proper judgment without regard to the conclusion.

In this case, there is no averment in the declaration of a readiness to perform, according to the tenor and effect of the contract; which distinguishes it from the case referred to in *Serg. and Low.*, where the averment was of a presentation, according to the tenor and effect of the bill; and besides, this being an action or a covenant, an averment of performance or an excuse was indispensable.

*McMahon*, in reply.

The covenants are distinct and independent, and not concurrent, and consequently performance or excuse need not be averred. *Arch. Pl.* 100. 10 *Johns.* 90.

The breach assigned in the declaration, is a breach of the entire contract, including time and place; and the plea only responds as to time, and is therefore no answer to the declaration. Under the breach as assigned, the plaintiff might have recovered by showing a readiness to perform on a different day, from the day mentioned in the declaration; there being no distinction in regard to time, between a sealed and an unsealed contract. In declaring on either, when the allegation is under a *scilicet*, the party is not bound to prove the averment strictly, if there are other words from which a different allegation may be inferred. In such case the court will assign the time, according to the legal effect of the contract. 8 *Serg. and Low.* 230. *Chitty on Bills*, 246, 360. The parties to this contract live in *St. Mary's* county, while it was to have been performed in *Baltimore;* and there the plea should have shown

the defendant to have been prepared to perform it on his part, and that he was prevented by the intervention of the Sabbath. The plea should have averred a readiness in *Baltimore*, at the time mentioned in the contract. This averment would certainly have been necessary, if the present defendants were plaintiffs suing for the purchase money, and there is no reason why the same strictness should not be required in a plea.

2. But the plea does not show that the day was the Sunday, or Lord's day, mentioned in the act of assembly, which being a *penal* act, must be rigidly construed.

The term Sabbath, does not necessarily, and *ex vi termini*, mean Sunday. It is a generic term, and means a day of rest, applicable to all nations, and every denomination of persons, Christians or Jews. It has no peculiar meaning, and would not be good in an indictment for violating the Sunday. If, however, the words Sabbath and Sunday have the same signification, still he insisted it meant the *solar* day, and the contract might have been performed before sunrise, or after sundown. 2 *Con. Rep.* 547. 2 *Strange*, 902. 3 *Burr.* 1595. 1 *Taunt.* 135. 10 *Mass.* 317. 13 *Mass.* 345. 8 *Cowen*, 67.

The true time for the performance of this contract was the Saturday preceding; but the plea by alleging a readiness to perform on Sunday, admits a want of readiness on Saturday. 4 *East.* 501. 5 *East.* 265.

A defective declaration may be aided by the admissions of the plea. *Gold on Pl.* 166.

CHAMBERS, J., delivered the opinion of the court.

The demurrer obliges the court to look for the first defect in the pleadings, and we think it is to be found in the declaration.

By the letter of the contract, the first day of July was appointed for the delivery of the corn, but that day happening to fall on Sunday, and the law prohibiting the delivery on Sunday, although it does not annul the contract,

it follows, that the execution of the contract was due on another day, and the delivery on that other day could be enforced. The failure to deliver on Sunday was no violation of the contract, according to its legal interpretation. There was no more obligation upon the party to execute the contract on Sunday, than there was on a day prior to the date of the contract. Let us suppose then, that the declaration had charged a breach of the contract, in the non-delivery of the article sold on some day prior to the date of the covenant, and confining the breach exclusively to such day; would it not be bad on demurrer, and why? Certainly it would, because the covenant of which profert is made, shews that the plaintiff had no claim to damages for the act complained of, that act not being at all in violation of the contract set forth.

Now, this declaration claims damages expressly and exclusively for the non-delivery on Sunday.

There are no words that allege or import a failure to deliver on any other day, and this most important particular differs this case from that in 8 *Serg. and Low*. There the presentment of the bill was alleged to have been made, "according to the tenor and effect thereof," and the *videlicet* being struck out, there remained an averment of the fact. Here there is no averment of the non-delivery according to the tenor and effect of the contract, nor any other but specific averment of a non-delivery on the first day of July, which was on Sunday.

The covenant to pay the stipulated price is a mutual covenant, and it was therefore incumbent on the plaintiff, to aver in his declaration a readiness to pay at the time and place, when and where, by the legal construction of the contract the delivery was to be made. 1 *Ch. Pl.* 278. 1 *East. Rep.* 203. *West vs. Emmons,* 5 *Johns. Rep.* 179. *Porter vs. Rose,* 12 *Johns.* 209.

The allegation of readiness to pay, is made solely in reference to Sunday, and the same remarks precisely apply

Kilgour *vs.* Miles and Goldsmith.—1834.

to this necessary averment, as we have before made in re-' spect to the assignment of the breach.

The efforts of the counsel to escape from these obvious difficulties, by taking a distinction between the "Sabbath" (as the day is described in the plea) and the "Lord's day," as mentioned in the act of Assembly, or "Sunday," cannot avail. The Sabbath is emphatically *the day* of rest, and the day of rest here is the "Lord's day" or christian's Sunday. Ours is a christian community, and a day set apart as the day of rest, is the day consecrated by the resurrection of our Saviour, and embraces the twenty-four hours next ensuing the midnight of Saturday. But without relying on the plea for the appropriate appellation of the day, or for any other aid, we think there is no difficulty, and the defendant might safely have demurred according to the doctrine of the case of *Hoyle vs. Ld. Cornwallis*, reported at large in *Strange*, 387, and the authority of which has never been disturbed we believe by any later decision.

That case recognizes it as the duty of the court, to notice the days of the week on which particular days of the month fall.

We have found much difficulty in determining whether the legal effect of the contract required its execution on Saturday or Monday. We have no statute or *Maryland* decision to guide us, and in the case in 2 *Con. Rep.* the only one produced, we find a great diversity of opinion amongst the judges. In the commercial community, as is admitted in the argument, the usage is established. In bank transactions, drafts, bills of exchange, and negotiable paper, amongst mercantile men, the pecuniary engagements becoming due on Sunday, according to the letter of the agreements, are discharged on the previous Saturday, and we think, that both analogy and convenience will be consulted, by deciding that the same rule shall govern other cases.

JUDGMENT AFFIRMED.

*The appellant's counsel afterwards, at the same term, moved the court for a procedendo, but the motion was overruled.*