(Decided 20th February, 1873.)

---

GEORGE J. APPOLD, SAMUEL APPOLD, SAMUEL KIRK, and JANE E. WILCOX, Guardian vs. THE PROSPECT BUILDING ASSOCIATION and JOHN SPEAR NICHOLAS.

*Practice in Equity—Death of a Party pending a Suit in Equity—Effect of a failure to Suggest the Death of a party, upon Subsequent proceedings.*

Upon the death of a party to a suit in Equity, the Court should be informed of the fact, so that new parties should be made, or other appropriate proceedings had, if deemed necessary; and if upon such suggestion no action is taken, it will be presumed that none was considered necessary.

Where after a decree to foreclose the mortgage of the complainant, the defendant dies, and there is no suggestion of his death, and no action of the Court in regard thereto, and no order directing the execution of the decree, the sale of the property and the ratification thereof is irregular and improvident, and will be set aside on appeal.

APPEAL from the Circuit Court for Baltimore County, in Equity.

On the 5th of November, 1869, The Prospect Building Association filed a bill in Equity for the sale of the estate and interest of Andrew J. Wilcox, in certain property situate in Baltimore county, which he had mortgaged to the complainant. On the 4th of March, 1870, Wilcox, who was made the sole defendant, answered, "neither admitting nor denying the matters and things alleged" in the bill of complaint, "but challenging the proof thereof." The Court passed a decree for the sale of the property, and it was sold. Prior to the sale, the trustees discovering that there was a suit pending in the Circuit Court for Baltimore county, instituted by John Spear Nicholas, for the sale of the same property, to enforce his vendor's lien, to the amount of more than $4,000, entered into an agreement with him, to allow them to sell the property, disincumbered of his lien, provided he was paid out of the proceeds of sale. Before the sale Andrew J. Wilcox died. On the 30th of May, 1871, the sale was finally ratified and confirmed, no exceptions having been filed. At the time of sale, the auctioneer acting at the instance, and under the direction of the trustees, announced that the property would be sold free and clear of all incumbrances. After the ratification of the sale, Jane Ellen Wilcox on the 31st of May, 1871, filed a petition alleging the death of Andrew J Wilcox, intestate, leaving two infant children, then living, and her appointment as their guardian; and praying that after payment of the mortgage claim and expenses, the

surplus of the proceeds of sale might be paid over to her as guardian as aforesaid. On the 3rd of June, 1871, Samuel and George J. Appold filed their claim on a judgment recovered against the deceased Andrew, in his life-time ; and Samuel Kirk filed a like claim. On the 8th of July, 1871, the auditor filed an account, allowing the mortgage claim of the complainant, and the two judgment claims, and awarding the residue of the purchase money to the guardian of the children of the deceased ; the account was ratified *nisi*, on the same day. On the 14th July, 1871, the trustees filed their answer under oath, to the petition of Jane Ellen Wilcox ; in this answer they set forth the agreement made by them with John Spear Nicholas, the reasons which induced them to enter into it, and what was done under it, viz : that the property was sold to the purchaser free from incumbrances, and with the purpose of paying off the lien claim of the said Nicholas, out of the proceeds of sale. The answer prayed that the petition might be dismissed, and that the trustees might be allowed to comply with their agreement, and pay the claim of Nicholas out of the purchase money.

The Prospect Building Association on the 18th of July, 1871, filed exceptions to the ratification of the auditor's report. The cause was submitted to the Court by agreement of counsel, and the report was finally ratified. Afterwards, on the 28th of November, 1871, the order of ratification was rescinded on the ground that it had been inadvertently passed. On the 2d of December, 1871, Jane Ellen Wilcox, the Appolds and Kirk filed a petition setting forth that they had no notice of any application made to the Court, to rescind the order finally ratifying the auditor's report, that the said order of rescision was a surprise upon them, and prayed the Court to annul the said order and allow the original order ratifying the auditor's report, to stand. On the 24th Feb-

ruary 1872, the Court passed an order remanding the cause to the auditor to take proof, and state another account in accordance with the proof so taken, and the views expressed in the opinion filed with the order. By this opinion the auditor was directed to take testimony as to the agreement between the trustees and Nicholas, and if such agreement should be proved, then, to state an account allowing Nicholas' claim.

On the 20th April 1872, the auditor filed his report, together with the testimony which he had taken; after stating that it had been proven that the trustees and Nicholas did agree that the former should sell the property clear and disincumbered of the latter's lien claim, and that the said claim should be satisfied out of the proceeds of sale, he stated an account in which said claim was allowed.

This report was ratified *nisi*, and thereupon the Appolds, Kirk and Jane Ellen Wilcox filed their exceptions to its ratification. On the 20th of June, 1872, the Court overruled the exceptions, and finally ratified the report. The exceptants appealed.

. The cause was argued before BARTOL, C. J., STEWART, BOWIE, BRENT and ROBINSON, J.

*Wm. Shepard Bryan,* for Jane E. Wilcox.

The decree did not authorize, and could not authorize, the trustees to sell any thing more than the interest of the parties to the suit. They did not advertise any interest of Mr. Nicholas, nor did they report any sale of it to the Court. The sale which was ratified was the sale decreed to be made and the one reported by the trustees.

As no interest of Mr. Nicholas was affected by the decree or the sale, he is an entire stranger to these proceedings, and has no interest whatever in the proceeds of sale. The sale was made subject to the rights of Mr.

Nicholas, which are not at all affected by these proceedings. *Tome vs. Merchants and Mechanics' Building and Loan Co.*, 34 *Md.*, 12.

Mr. Nicholas could not have sold the property to satisfy the vendor's lien, without a decree of the Court to that effect, and clearly he could not authorize the trustees to do what he could not do himself.

If he had obtained a decree, he would have sold the property free from all subsequent incumbrances, and even from the claim of dower. These incumbrancers and the doweress, therefore necessarily would have had a right to contest his claim or to redeem it if it had been established.

But this proceeding extra-judicially decrees and enforces a sale upon a mere agreement between those who desired a sale, without the consent of those whose rights were thereby extinguished. There is a great difference between an assignment by a vendor of his lien and a sale of the property to satisfy it, which cuts off all subsequent incumbrancers. The latter proceeding is the peculiar prerogative of a Court of Equity.

In this case it has been attempted to prove both the vendor's lien and the agreement by parol testimony. The agreement between Nicholas and the trustees was ineffective in any point of view.

*Thomas R. Clendinen,* for the Appolds.

Neither the trustees—the purchaser, nor any one else impeach the report of sale, and if they did it would be too late, as several terms have passed since its ratification; therefore it is the basis by which the Court must be governed in considering the matter—consequently it is too late for the trustees to attempt to set up a different state of facts, if they existed, from those solemnly sworn to by them in their report—which state of facts would make the report a nullity and an absurdity; having shown that the report must stand and be the evidence of

the contract by which the Court is to be governed, it is equally clear, the opposite statements made by the trustees, which would contradict it, must fall.

If there had been any such statements or agreements between the trustees and the purchaser, they, the trustees and the purchaser should have obtained the approbation of the Circuit Court, to the plan they wished to pursue; for Courts of Equity will not look with favor upon the appropriation by its trustees of the proceeds of sale made under its decree, *without* its *previous authority*, and such conduct will be viewed with especial jealousy where married women, children or creditors are concerned. *Sewall vs. Costigan*, 1 *Md. Ch. Dec.*, 208.

The trustees were the agents of the Court, acting under specially delegated authority; their instructions are contained in the decree open to the inspection of all, and if they do not follow them. no one dealing with them has a right to complain if the Court should refuse to ratify their acts. *Latrobe vs. Herbert*, 3 *Md. Ch. Dec.*, 375; *Glenn vs. Wootten*, 3 *Md. Ch. Dec.*, 514.

There are no exceptions by anybody to the claim of the Appolds, it apparently meets with the approbation of all—no one objects to it—it was properly allowed. The first audit is correct in principle and figures, and should stand.

*J. T. McGlone* and *C. Bohn Slingluff*, for the appellees.

No appeal lies from the order of Court of the 28th November 1871, rescinding the order of the 22d November preceding, by which the auditor's report filed in the cause had been finally ratified and confirmed. The order was passed during the term in which the order rescinded had been passed. The Court below, on motion or petition or *sua sponte*, may revoke *before enrolment* any of its orders or decrees; and such action is not the subject of an appeal. *Hunting vs. Walter*, 33 *Md.*, 60; *Burch vs. Scott*, 1 *Bl.*, 112.

The order of 28th November was properly passed inasmuch as the order of the 22d November had been inadvertently signed upon a mistaken view of the facts, by the Court.

The trustees had a right to sell the property disincumbered of the lien of Nicholas. Such right on the part of trustees has been repeatedly recognized in this State. *Brooks vs. Brooke, et al.,* 12 *Gill & Johns.,* 306. *Lee vs. admrs. of Boteler, &c.,* 12 *G. & J.,* 326; *Speed vs. Smith,* 4 *Md. Ch. Dec.,* 299; *Andrews vs. Scotton,* 2 *Bl.,* 629.

The advertisement is not the contract between the parties, and it is the constant practice of trustees to introduce other terms of sale, and make known to bidders at the time of sale, facts and circumstances affecting the title or value of the property not mentioned in the advertisement, and parol proof of such facts is always admitted when it becomes necessary to resort to it to uphold or vacate a sale. *Farmers' & Planters' Bank vs. Martin and Travers* 3 *Md. Ch. Dec.,* 224; *Mackubin vs. Brown,* 1 *Bl.,* 410; *Andrews vs. Scotton,* 2 *Bl.,* 629.

If the trustees had applied to the Court for permission to sell the property disincumbered, the Court would undoubtedly have granted such permission. Hence where a trustee exercises a power which if previously applied for would have been granted as a matter of course, a Court of Equity will in the absence of proof showing the inexpediency and injustice of so doing, ratify the act done in the same manner, as if the requisite authority had been applied for and granted. *Gray, &c. vs. Lynch &c.,* 8 *Gill,* 403.

It cannot be urged that the action of the trustees operated as a surprise upon any of the parties interested, when it is admitted in the case that the trustees, through the auctioneer, did announce that the property was to be sold free and clear of all incumbrances. The petitioners then, by their own admission, had knowledge of the con-

tract between the trustees and the purchaser that the title was to be disincumbered.

The case comes within the principle mentioned in *Glenn vs. Clapp*, 11 *G. & J.*, 1, that the trustees ought to have used "reasonable efforts to disembarrass the title of difficulty."

A sale by a trustee is a contract between the Court and the purchaser, and the Court will see that the contract made with the purchaser is carried out, and that he is in no wise prejudiced or injured thereby. The objection is made that the arrangement with Nicholas was not reported by the trustees to the Court, in making their report of sale, but if the Court would have ratified the report, if the fact had been so reported, the Court will afterwards ratify the action of the trustees when such action is brought to its knowledge. *Gray, &c. vs. Lynch &c.*, 8 *Gill,* 403.

Admitting that they had full knowledge of the contract between the trustees and the purchaser, that the property was sold free from incumbrances, the appellants allowed the sale to be finally ratified before they appeared in the case, and they then asked not that the sale should be set aside on the ground of surprise, or mistake, or injustice to the parties interested, which they could have done (if the facts complained of had been sufficient to justify such allegations,) at any time during the term, but that the sale should stand ratified, and a large balance of the purchase money paid to them to the exclusion of the lien claim of Nicholas, in violation of the contract of the trustees, and to the great injury of the purchaser, who would thus take the property subject to the heavy claim of Nicholas, although paying the price of unincumbered property. The appellants should have asked that the sale be set aside; and they are not entitled to the payment of their claims as the case now stands, until after the incumbrances on the property are paid.

There was sufficient proof of Nicholas' claim. He had filed a bill for the sale of the property to enforce the payment of his vendor's lien; and the auditor had a right to resort to the papers in that cause to ascertain the amount of the claim. *Barroll's Ch. Prac.*, 333; *Winn & Ross vs. Albert*, 2 *Md. Ch. Dec.*, 169; *Albert and Wife vs. Winn & Ross, et al.*, 5 *Md.*, 66.

The Court had referred the whole matter to the auditor to take proof, and before the auditor the statement of the claim had been filed, and Nicholas himself had testified in the presence of the counsel for the appellants, that no part of his claim had been paid or satisfied.

STEWART, J., delivered the opinion of the Court.

From a review of the record of the proceedings in this cause, it is manifest that there has been such irregularity, and the case is so involved, that the reversal of particular orders only would not meet the substantial ends of justice, between the parties interested. The Building Association, the mortagee that instituted the proceeding—John Spear Nicholas, the vendor of the property to the defendant—certain creditors who have intervened—the widow and children of the defendant—the purchaser, who is interested in procuring an available title, under a valid sale, have all to some extent been shown to be affected by the proceedings; and their interests have been disclosed, although all of them are not strictly parties to the cause. Without going into a useless detail of the proceedings, it is very clear the purposes of justice require that the property should be re-sold, with a full understanding that the sale is made, disencumbered, not only of the mortgage, but the vendor's lien of Nicholas, and any claim the widow of the defendant, and his children, may have to the property. With this view the case will be remanded for further proceedings.

It appears that after the decree passed on the 10th of August, 1870, to foreclose the mortgage of the Building Association, and before the sale of the property on the 19th April, 1871, the defendant, Andrew J. Wilcox, departed this life, to wit, on the 15th November, 1870—that he died intestate, leaving his widow, Jane Ellen Wilcox, and two children, Julia C. and Elizabeth B. Wilcox, who were minors, his only heirs.

There is no suggestion of his death on the record, to enable the Court to take such action, if any was deemed necessary by the Court, in this exigency.

The 7th and 8th secs. of the 16th Art. of the Code, make provision against the abatement of the decree by the death of any of the parties.

It was proper that the Court should be informed of the fact of the death of any of the parties, so that if deemed necessary from the nature of the case, that new parties, or any other appropriate proceeding should be had, the Court could determine upon suggestion of the death.

If upon such suggestion no action was taken, the intendment could be made that none was deemed necessary.

Finding no suggestion of the death of the defendant, or action of the Court in regard thereto, and no order of the Court directing the execution of the decree, the sale and ratification thereof, was irregular and improvident, and ought and will be reversed on this appeal.

It further appears that at the time of the decree aforesaid, John Spear Nicholas had filed a bill in the same Court, for the sale of the same property, to enforce a lien held by him, as vendor, not having parted with the legal title, and that the defendant held but the equitable interest in the same. These cases both pending in the same Court for the sale of the same property, might have been consolidated, so that by the action of the Court, in the exercise of its immediate authority, without the intervention

of the trustees, the property might have been sent into the market, for public sale, disencumbered of both the legal and equitable claims of Nicholas and the defendant respectively, and thus command a fair price, and the purchaser be enabled to acquire a valid title to the property, disencumbered of such liens.

The widow of the defendant, in such case, being entitled to her dower out of the proceeds, as the property will be sold freed from any claim she may have.

The orders ratifying the sale, and the auditor's report will be reversed, and the cause remanded for further proceedings.

*Orders of ratification of sale and auditor's report reversed, and cause remanded for further proceedings.*

(Decided 21st February, 1873.)