J. J. GILLOOLEY, *Appellant*, v. E. D. VAUGHAN, ET AL., *Appellees*.

Division B.

Opinion Filed November 22, 1926.

1. There is no impropriety, from a constitutional standpoint, in clothing our municipal governments with legislative power to prohibit and punish by ordinance any act made penal by the State laws, when perpetrated within municipal limits; and it is no objection to such an ordinance that it prescribes the same penalties as the State law for the commission or omission of the same act; or that the offender may be tried and punished for the same act under both the ordinance and the State law; or that a conviction or acquittal under the one is no bar to prosecution under the other; and it is no objection to the municipal ordinance that the trial thereunder is without a jury. In avoidance of the theory that such a status of the law subjects the offender to the constitutionally inhibited second jeopardy and punishment for the same offense, the question is assimilated to the dual trials and punishments, the one in the Federal Courts, the other in the State tribunals, that follow the same act when it infracts both a State law and congressional legislation.

2. The period covered by the designation "Sunday" in statutes prohibiting the performance of labor and certain acts on Sunday which are entirely lawful at any other time, is the

natural day existing between 12 o'clock midnight at the end of Saturday and 12 o'clock midnight at the beginning of Monday. Our week is divided into seven days of equal length, each day of the week embracing 24 hours. That part of time occurring immediately after midnight at the end of Saturday is no longer a part of Saturday, but there begins the new day and the name of that day is "Sunday."

3. That the fact that it is convenient and profitable to perform certain labor or transact certain business on Sunday does not render it a necessity nor exclusive from the operation of law.

4. The classification of moving picture shows with cabarets and dances held not to be unjust and unreasonable.

An Appeal from the Circuit Court for Pinellas County; Freeman P. Lane, Judge.

Affirmed.

*James F. Bickers,* Attorney for Appellants.

*Booth & Hobson, A. S. Bradley* and *Mabry, Reaves & Carlton,* for Appellees.

BUFORD, J.—The Appellant filed Bill of Complaint in the court below seeking to restrain the Appellee as Chief of Police of the City of St. Petersburg from enforcing against the Appellant the provisions of Ordinance No. 422-A of the City of St. Petersburg, which Ordinance forbids any person, firm or corporation, owner, lessee, manager, employee or volunteer worker to carry on or participate in the business or occupation of a moving picture show, moving picture theatre, cinema film display, theatre, cabaret, or public dance on Sunday, and which ordinance also defines Sunday to mean from 12 o'clock midnight at the end

of the calendar day Saturday and extending through the 24-hour day Sunday and ending at 12 o'clock midnight of the calendar day Sunday.

There was a demurrer interposed to the bill. The demurrer was sustained and the bill dismissed. The demurrer was general but contained several grounds. The reason which prompted the court below to sustain the demurrer and dismiss the bill is not material here. The question here presented is whether or not the Bill of Complaint should have been held to be good against a general demurrer for want of equity. The allegations of the bill that the defendant in the court below would "unless restrained by this Honorable Court, arrest him, his employees, and close his place of business. That this threatened prosecution and arrest and interference with complainant's business is the beginning of numerous others that will follow at the instance of the defendant and he has informed your orator that unless he desist from opening his said moving picture theatre on Sunday that he will repeatedly arrest him and his employees and confine him to the city jail, and unless enjoined by this Honorable Court he will carry out his said threats and work irreparable injury upon the complainant and his property rights in that, he will lose a large income derived from carrying on the legitimate business of operating moving picture shows and that he will have no adequate remedy at law because the said defendant, Vaughan, is insolvent and a judgment had against him cannot be collected.

Furthermore, he would have no adequate redress at law because of the fact that the damages recoverable in a trespass of such character would be the profits arising from conduct of such business and such profits would be so speculative and conjectural as not to be ascertainable or allowed in a court of law," are sufficient to differentiate this case from that of Rawls v. City of Miami, et al., 82 Fla. 65; 89

Sou. 351, and to give the appellant the right to have his complaint heard by a Court of Equity.

Validity of the Ordinance is challenged on eight grounds, as follows:

"(a) Said alleged ordinance or by-law is violative of Section 11 of the Declaration of Rights adopted by the convention of 1885, providing that no person shall be    *    *    *    deprived of life, liberty or property without due process of law, nor shall private property be taken without just compensation."

Your orator would show that the closing of his moving picture show and his arrest is a deprivation of his liberty and of his property without due process of law, and is a taking of his private property without compensation.

(b) Said alleged by-law or ordinance is violative of Section 1 of Article 3 of the Constitution of the State of Florida, providing that the

"Legislative authority of this State shall be vested in a Senate and House of Representatives, which shall be designated the Legislature of the State of Florida, and the sessions thereof shall be held at the seat of government of the State."

Said alleged by-law or ordinance is invalid in this respect because it seeks to set up as an offense an act permitted under the State law.

(c) Said alleged by-law or ordinance is invalid in that the said alleged by-law or ordinance is arbitrary discrimination between the inhabitants of this city, in that in said alleged ordinance it is sought to prohibit moving picture theatres, cinema film display, theatres, cabarets or public dances on Sunday, when other businesses or professions are not prohibited or interfered with.

(d) Said alleged ordinance or by-law is illegal and void in that the City of St. Petersburg, acting through its Commissioners or legislative authority is not authorized to

pass such an ordinance. In said legislative act creating the charter of the City of St. Petersburg there is no express authority to pass any laws with respect to business or professions on Sunday and the operation of moving picture shows on Sunday is not within the general or implied powers granted by the Legislature to the municipalities.

(e) Said alleged ordinance or by-law is illegal and void in that, said ordinance or by-law seeks to alter or change a well-settled principle of the common law and law of this State as established by the Supreme Court and to establish a rule interfering with the rights of the individual and the public in that the common law and the law of the State, as construed by the Supreme Court, has defined Sunday in the sense in prohibitory acts to be from sunrise to sunset, whereas the said alleged by-law or ordinance seeks to establish Sunday as from twelve o'clock Saturday night until twelve o'clock Sunday night.

(f) Said alleged by-law or ordinance is invalid and void in that under the charter of the City of St. Petersburg it is provided that the title of every ordinance shall be clearly set out and no ordinance except one making appropriations shall contain more than one subject, whereas the said alleged ordinance is not one making appropriations, and does contain more than one subject, to-wit, moving picture shows, moving picture theatres, cinema film displays, theatres, cabarets or public dances on Sunday.

(g) Said alleged by-law or ordinance is invalid in that, it is an unjust, unreasonable classification of the moving picture show with the cabarets and dance halls.

(h) Said alleged by-law or ordinance is void in that, it is provided in said charter, Section 69 thereof, that the Board of Commissioners shall pass ordinances or resolutions only by taking the ayes and noes, which shall be entered in its minute book, and your orator avers that said

ordinance was not passed by the taking of the ayes and noes, but on the contrary, by a viva voce vote.''

The Appellant alleged in his Bill that ''he is the owner of a certain moving picture theatre and show house, including the property thereof, located on Lot 140 First Street, North, in the City of St. Petersburg, in Pinellas County, Florida. He has owned the said building for years and has and is engaged in exhibiting pictures, known as moving pictures, regularly at night to a large patronage. He has a large amount of money invested in said property, site and equipment, and is expending large sums in pursuit of his using and displaying and instructive moving pictures, and it is necessary to keep said house running continuously in order to reap a reasonable profit from the ownership and use of said property. Anything that deprives him of the use thereof is a deprivation and denial of valuable rights of ownership.'' This allegation clearly brings the Appellant within the purview of Section 5491 Rev. Gen. Statutes of Fla., should such business as he describes therein be conducted on Sunday. The language of that statute is as follows:

''Following trade, etc., on Sunday.—Whoever follows any pursuit business or trade on Sunday, either by manual labor or with animal or mechanical power, except the same be work of necessity, shall be punished by a fine of not exceeding fifty dollars; provided, however, that nothing contained in the Laws of Florida shall be so construed as to prohibit the preparation or printing between the hours of midnight Saturday and 6 in the morning, Sunday, of any newspaper intended to be circulated and sold on Sunday, or to prohibit the circulation and sale on Sunday of same, or to prohibit the circulation and sale on Sunday of any newspaper theretofore printed.'' The language used in this statute excepting from the operation thereof the pre-

paration or printing between the hours of midnight Satur-
day and 6 in the morning Sunday of any newspaper in-
tended to be circulated and sold on Sunday, very clearly
shows that the period of time intended by the legislature
to be embraced in "Sunday" was and is the 24 hour period
between the ending of Saturday and the beginning of
Monday.

We shall consider the alleged infirmities of the ordi-
nance in the order in which they are presented in the Bill
of Complaint, although it may be that some of the ques-
tions so presented are not clearly presented by the Assign-
ments of Errors.

The grounds of objections to the validity of the ordi-
nance as stated in paragraphs "a", "b", "c" and "d"
are fairly disposed of against the contention of the Appel-
lant by the law as enunciated in the case of Theisen v. Mc-
David, 34 Fla. 440; 16 Sou. 321. The charter of the City
of St. Petersburg is Chapter 6772, Acts of 1913, in Sec. 2,
paragraph "f", provides:

"The legislative, executive and judicial powers of the
city shall extend to all matters of local, municipal govern-
ment, it being the intent hereof that the specification of
particular powers by other provisions of this Charter, shall
never be construed, as impairing the effect of the general
grant of powers of local government hereby bestowed; the
City shall also have all the powers and functions which by
or pursuant of the Constitution, or of the Laws of this
State, have been or could be granted or exercised by this
City."

Section 24 of the same Act provides, in part, as follows:

The Powers of the Board of Commissioners.—The Board
of Commissioners of the City of St. Petersburg, Florida,
shall have the power to make, ordain and establish for the
government of said City, and the officers of the City, such

ordinances in writing and such by-laws not inconsistent with this Charter, the Constitution and Laws of the State of Florida or the United States, as they may deem necessary." Sec. 1839, Rev. Gen. Statutes of Fla.; Municipalities in this State are authorized "to pass all ordinances and laws as may be expedient and necessary for the preservation of the public peace and morals."

In the case of Thiesen v. McDavid, *supra,* this Court in construing the language used in Sec. 1839 above referred to, say:

"There is no impropriety, from a constitutional standpoint, in clothing our municipal governments with legislative power to prohibit and punish by ordinance any act made penal by the State laws, when perpetrated within municipal limits; and that it is no objection to such an ordinance that it prescribes the same penalties as the State law for the commission or omission of the same act; and that the offender may be tried and punished for the same act under both the ordinance and the State law; and that a conviction or acquittal under the one is no bar to prosecution under the other; and that it is no objection to the municipal ordinance that the trial thereunder is without a jury. In avoidance of the theory that such a status of the law subjects the offender to the constitutionally inhibited second jeopardy and punishment for the same offense, the question is assimilated to the dual trials and punishments, the one in the Federal Courts, the other in the State tribunals, that follow the same act when it infracts both a State law and congressional legislation." And, again, in the same case, the Court say:

"Were it not for the use of the word *"morals"* in this general provision of the law, we should have some hesitancy in reaching the conclusion that under it our municipalities are empowered to enact ordinances prescribing

penalties for the non-observance of the Sabbath in the conduct of business pursuits within their corporate limits. Our legislature did not rest content, as do many similar enactments of the other States, with clothing our cities and towns with the power to preserve the *public peace* within their borders, but go further and expressly delegate to them the authority to preserve the *public morals*. The fourth command of the Decalogue is: 'Remember the Sabbath Day, to keep it holy.' What would be said of the public morals of a city whose laws permitted the general conduct of all classes of business enterprises on that day? The universal verdict would be that they were at a very low ebb.''

And, again, in the same case, the Court say:

''Because the municipality does not see proper to cover the same ground, and to make penal the exercise on Sunday of all of the same occupations as does the State law, does not render it either inconsistent with or repugnant to the State law.''

The contention that the ordinance is invalid because it is arbitrary and a discrimination between the inhabitants of the city is not well taken. The ordinance does not discriminate against any person belonging to any of the classes of occupations or conducting any of the businesses, the conduct of which is prohibited on Sunday, but puts them all on equal footing and is general and of uniform operation as to those classes. All persons engaged in the businesses named are affected in the same manner by the operation of the ordinance. The fact that the ordinance includes certain occupations or the conduct of certain businesses and does not include others, does not make it obnoxious on the ground of discrimination. (Thiesen v. McDavid, *supra*).

We hold that the ground of attack upon the ordinance

as set out in paragraph "d" is not tenable for two reasons. One of these reasons is that the City is authorized by its charter to enact such ordinances in writing and such by-laws not inconsistent with the charter, the Constitution and laws of the State of Florida or of the United States, as they may deem necessary. This provision clearly authorizes the City to adopt ordinances consistent with the statutes of Florida. Section 5491 prohibits the following of any pursuit, business or trade on Sunday, either by manual labor or with animal or mechanical power, and the appellant has definitely alleged in his Bill of Complaint that this is exactly what he proposes to do. Aside from this, the City of St. Petersburg under its charter is also vested with the general powers conferred on municipal corporations. One of these general powers is the authority to enact all such ordinances and laws as may be expedient and necessary for the preservation of the public peace and morals.

The contention made by the appellant under the allegation contained in paragraph "e" of the bill of complaint is that the ordinance has erroneously and without authority designated Sunday to be that period of time existing between twelve o'clock midnight at the end of the day Saturday and twelve o'clock midnight at the beginning of the day Monday, his contention being that Sunday only includes the hours from sunrise to sunset. To the casual observer this contention might appear to be sustained by the opinions of this Court in the cases of Hodges v. the State, 39 Fla. 500, 10 Sou. 556; Handley v. State, 50 Fla. 82, 39 Sou. 149; Barnes v. State, 68 Fla. 291, 67 Sou. 131; Higginbotham v. State, 88 Fla. 26. A careful study of these cases, however, will disclose that the question here presented was not raised in any of them. In all of these cases the court was dealing with the question of the au-

thority of judicial tribunals to function on Sunday, and as there was no statute controlling the matter in this State it was needful to revert to the rule under the common law both as to what judicial function might be performed on Sunday and what period of time was included in Sunday considered as *dies non juridicus,* and it was there held that Sunday *dies non juridicus* extended from sunrise to sunset on the day Sunday. An entirely different rule obtains, however, in defining Sunday as referred to in statutes prohibiting the performance of labor and certain acts on Sunday which are entirely lawful at any other time; and we find that in applying these statutes the great weight of authority in this country is, and we think logically and rightly is, that the period covered by the designation ''Sunday'' is the natural day existing between twelve o'clock midnight at the end of Saturday and twelve o'clock midnight at the beginning of Monday. Our week is divided into seven days of equal length, each day of the week embracing twenty-four hours. That part of time occurring immediately after midnight at the end of Saturday is no longer a part of Saturday, but there begins the new day and the name of that day is ''Sunday.''

Mr. Justice Jackson, speaking for the Supreme Court of Georgia in 1875, in the case of Salter *et al.* v. Smith, made the following approved observation:

''We think that this statute should be rigidly enforced. Independently of the moral obligation resting upon all men to obey the law of the Lord, and to observe by abstaining from all secular business, the day set apart for His worship throughout Christendom, the rest of one day in seven from all physical and mental labor, is a great conservative, refreshing, invigorating means designed by Almighty wisdom for the preservation of health and the recreation of our mental and bodily faculties. But neither the law of God

nor the law of man forbids us to do good on the Sabbath day. The Savior rebuked the Pharisees who questioned His divinity, because. he healed the impotent man on the Sabbath, and bade him take up his bed and walk; and He who spake as never man spake said that the Sabbath was made for men, not men for the Sabbath, and that it was lawful to do good on the Sabbath day; and His own pure and perfect life illustrated His teaching by deeds of constant kindness and beneficence on the Sabbath day. When the statute of Georgia, therefore, excepts works of benevolence and charity from the operation of this penal statute, it but re-enacts the law of the Almighty as announced by the Savior and beautified by His example.''

In 1834 Mr. Justice Chambers, speaking for the Court of Appeals of Maryland, in the case of Kilgour v. Miles, 6 G. & J., 268, declared:

''The Sabbath is emphatically *the day* of rest, and the day of rest here is the ''Lord's Day'' or Christian's Sunday. Ours is a Christian community and a day set apart as a day of rest is the day consecrated by the resurrection of our Savior, and embraces the twenty-four hours next ensuing the midnight of Saturday.''

It appears to be well settled that in the absence of a statute providing otherwise Sunday is the natural day of 24 hours as hereinbefore stated. It is so held in Henderson v. Reynolds, 84 Ga. 159, 10 S. E. 734; Kroer v. People, 78 Ill. 294; State v. Heard, 107 La. 60; 31 Sou. 384; Philadelphia &c. R. R. Co. v. Lehman, 56 Md. 209; Kilgour v. Miles, *supra;* State v. Green, 37 Md. 466; Pulling v. People, 8 Barb. (N. Y.) 384; Hiller v. English, 4 Strobh (S. C.) 486.

Under the statutes of Connecticut prohibiting any secular business or labor on Sunday, except works of necessity or mercy, conviction for operation of a picture show on

Sunday was sustained. State v. Ryan, 69 Atlantic 536. To the same effect was Graham v. State, 134 Tenn. 285; City of Topeka v. Crawford, 96 Pacific 862.

It is also well settled that the fact that it is convenient and profitable to perform certain labor or transact certain business on Sunday does not render it a necessity nor exclusive from the operation of law. Burns v. Moore, 76 Ala. 359, 52 Am. Rep. 332; Barfield v. State, 85 Ark. 134, 107 S. W. 393; Arnheiter v. State, 115 Ga. 572, 41 S. E. 989; State v. Stuckey, 98 Mo. Appeals, 664, 73 S. W. 735; Commonwealth v. White, 190 Mass. 578, 77 N. E. 636; Handy v. St. Paul Globe Publishing Co., 41 Minn. 188, 42 N. W. 872.

Thus it will be seen that the ordinance in section 2 thereof defining Sunday for the purposes mentioned in the ordinance has only covered that period of time which must have been held to be covered, had the ordinance not specifically so defined the time referred to.

We find no valid ground for the objection that the ordinance is invalid in that it is an unjust and unreasonable classification of the moving picture show with cabarets and dances, as is contained in paragraph "g" of the bill of complaint.

Paragraph "h" of the bill of complaint avers that the ordinance is void, because the provisions of the charter were not complied with in its passage. This objection has not been insisted upon by reference thereto in the assignment of errors. The same attorneys who represent the appellant here have stipulated in the record appearing in two other cases pending in this court in which the validity of same ordinance is attacked, that the ordinance was regularly passed. The bill further alleges that the ordinance was adopted by a majority vote of the electors voting in a special election duly and regularly called and held for that

purpose as provided for in the charter. Therefore, we consider this ground of objection as abandoned.

It is therefore ordered that the order of the chancellor sustaining the demurrer and dismissing the bill of complaint be and the same is hereby affirmed.

Affirmed.

WHITFIELD, P. J., AND TERRELL, J., concur.

BROWN, C. J., AND STRUM, J., concur in the opinion.

ELLIS, J., concurs specially.

BROWN, C. J., concurring.—I concur in the conclusion reached, and also in the opinion of Mr. Justice BUFORD, in this case, but I cannot concur fully in the reasoning set forth in some of the cases cited, which cases seem to take the position that the validity of the laws prohibiting work on Sunday should be sustained for religious reasons. This is contrary to the almost unanimous weight of authority in this country. As was said by the Supreme Court of the United States in the case of Soon Hing v. Crowley, 113 U. S. 703, 28 L. Ed. 1145, upholding an ordinance of the City of San Francisco prohibiting the operation of public laundries on Sunday: "Laws setting aside Sunday as a day of rest are upheld, not from any right of the government to legislate for the promotion of religious observances, but from its right to protect all persons from the physical and moral debasement which comes from uninterrupted labor. Such laws have always been deemed beneficial and merciful laws, especially to the poor and dependent, to the laborers in our factories and workshops and in the heated rooms of our cities; and their validity has been sustained by the highest courts of

the States.'' And in the case of Petit v. Minnesota, 177 U. S. 164, 44 L. Ed. 716, the following paragraph appears: ''We have uniformly recognized State laws relating to the observance of Sunday as enacted in the legitimate exercise of the police power of the State. The subject was fully considered in Hennington v. Georgia, 163 U. S. 299, 41 L. Ed. 166, Sup. Ct. Rep. 1086, and it is unnecessary to go over the ground again. It was there said: 'The legislature having, as will not be disputed, power to enact laws to promote the order and to secure the comfort, happiness and health of the people, it was within its discretion to fix the day when all labor within the limits of the State, works of necessity and charity excepted, should cease.' And these observations of Mr. Justice Field, then a member of the Supreme Court of California, in *Ex Parte* Newman, 9 Cal. 502, whose opinion was approved in *Ex Parte,* Andrews, 18 Cal. 678 in reference to a statute of California relating to that day, were quoted: 'Its requirement is a cessation from labor. In its enactment the legislature has given the sanction of law to a rule of conduct which the entire civilized world recognizes as essential to the physical and moral well-being of society. Upon no subject is there such a concurrence of opinion, among philosophers, moralists, and statesmen of all nations, as of the necessity of periodical cessations from labor. One day in seven is the rule, founded in experience, and sustained by Science. * * * The prohibition of secular business on Sunday is advocated on the ground that by it the general welfare is advanced, labor protected, and the moral and physical well-being of society promoted. Well-nigh innumerable decisions of the State courts have sustained the validity of such laws.''

While religious views and feelings may have had some influence upon the legislature in its selection of the particular day that should be set apart as a day of rest from

ordinary labor and business, this consideration is not destructive of the validity of such laws as a legitimate exercise of the police power. If it was within the police power of the legislature to set apart one day in every week as a day of rest, it does not detract from the validity of such legislation, but rather adds to its appropriateness and practical wisdom, that the legislature should have selected as such day of rest the day which a large proportion of our people, no doubt a large majority, voluntarily observe as a day of rest and worship, for religious reasons.

It remains, however, undoubtedly true, and thoroughly established, by the decisions of our courts, both state and national, that such laws cannot be upheld upon religious grounds. This proposition is recognized by distinguished counsel for the City of St. Petersburg in this case. In their brief, they say: ''The statutes forbidding work and labor on Sunday are civil regulations upheld as such purely on the ground that it is to the best interest of the physical and moral wellbeing of the people to have a uniform day of rest. The statute law does not in any sense deal with Sunday as a day of worship, but only as a day of rest. In fact, such statutes could not stand under our constitution upon any other theory.''

This must needs be true in this country, which was founded upon the principles of religious liberty and complete separation of church and State, which principles were embedded in our national and state constitutions. Thus, in our federal constitution, we find that the first of the ten original amendments reads as follows: ''Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'' And in our own state constitution, we find that sections 5 and 6 of the Declaration of Rights provide, *inter alia,* that ''The free exercise and enjoyment of religious profession and worship

shall forever be allowed in this state," and that "No preference shall be given by law to any church, sect, or mode of worship." Abundant citations of cases will be found in 37 Cyc. 539-542; Am. & Eng. Ency. Law, 2nd ed., 390-403.

STRUM, J., concurs.

ELLIS, J., concurring.—I agree to the conclusion reached that the order of the chancellor sustaining the demurrer to the bill and denying the injunction which was applied for was correct and should be affirmed.

The soundness of the order depends upon the validity of an ordinance of the City of St. Petersburg prohibiting any person, firm, corporation, owner, manager, employee, or volunteer worker, from carrying on or participating in the business or occupation of a moving picture show, theater, cabaret or public dance on Sunday. The ordinance was passed January 25, 1926.

In support of the validity of such ordinance I am unable to find any satisfying reason which does not rest in some degree upon the assumption that the prohibited occupations are inherently vicious, at least potentially corrupting and degrading, with a detrimental reflex action upon the public, and that the State through its agencies has the power to prohibit activities in such occupations wherever and whenever in the judgment of the persons exercising the power it may be wise to prohibit them.

. I do not seek to justify such ordinances upon any argument that rests upon religious considerations, because I conceive such arguments to be unsound in view of the provisions of our constitutions and the very elements of American institutions. Nor do I seek to justify such legislation upon the argument that such occupations carried on upon

the "Sabbath" of the Decalogue exert a corrupting influence upon public morals any more certainly than if they are carried on upon the Sunday or Monday of the Christian calendar. Neither do I assent to the argument that the practice of a legitimate occupation a part of every day in the week is harmful to individual or public health, peace or morals, to preserve which from evil influences the prohibition of such occupation during all the hours of one day in the week is essential. If that argument is sound, then the prohibition of such occupations during all the hours of any *one* day of the week would answer the logical requirements.

I do not perceive the force which any argument, offered in support of the reason for such laws, gains by combining religious views concerning the admonition to observe the "Sabbath to keep it holy," with the utilitarian view of preserving health to the individual by limiting his activities in legitimate occupation to the hours contained in six days of the week.

The effort to supply a reason for the existence of some laws where none appears to exist is often apparent.

The "Sabbath" day of the Decalogue is not the "Sunday" of the Christian calendar, so it is now pretty generally admitted. The Decalogue is Hebrew law and Hebrew government was religious government; so to make an analogy between the Sabbath of the Decalogue and Sunday of the Christian calendar is to introduce the element of religious consideration which under our system of government may not be the reason for the law. To agree that one day's rest in each week from one's vocation is essential to the preservation of the peace, health and morals of the community, aside from being subject to many exceptions and even contradictions, is amenable to the objection first, that not all the hours of every day are devoted to one's business; there are hours each day for rest and

recreation; second, that prohibiting the activities on any one day in the week other than Sunday and permitting it on that day would answer the requirements of that logic.

I am unable, therefore, to follow the reasoning of either the majority or concurring opinion; nevertheless, I agree to the conclusion reached, and I do so upon the proposition that any occupation which depends for its successful practice upon public patronage is subject to the State's censorial power.

Much could be said upon this subject, particularly the limits within which the power may be lawfully exercised and to what extent the presumption of lawful exercise of the power obtains from the mere existence of the law prohibiting the occupation. I merely presume the ordinance in question to be a valid exercise of the power and say there is nothing in the bill to show that the particular moving picture show possesses none of the elements detrimental to public morals, health or peace.